BRUCE COLEMAN *v.* STATE OF INDIANA.
ULYSSES COLLINS AND JAMES WASHINGTON *v.*
STATE OF INDIANA.

[Nos. 975S213, 975S214, 975S215 Consolidated under 975S215.
Filed September 21, 1976.]

*Samuel J. Goodman, Kirk A. Pinkerton, Given Dawson & Cappas,* of East Chicago, for appellant Coleman. *Samuel J. Goodman, Mark H. Holtan, Kirk A. Pinkerton, Given Dawson & Cappas,* of East Chicago, for appellants Collins and Washington.

*Theodore L. Sendak,* Attorney General, *John D. Shuman* and *Elmer Lloyd Whitmer,* Deputy Attorneys General, for appellees.

ARTERBURN, J.—The Appellants, Bruce Coleman, Ulysses Collins, and James Washington, were convicted on December 21, 1974, of the murder of one Roger Williams. Appellant Coleman was found guilty of first degree murder. Appellants Collins and Washington were found guilty of second degree murder. Motions to correct errors were filed by the Appellants on March 10, 1975. The motion filed by Appellant Coleman was denied by the trial court on June 25, 1975. That filed by Appellants Collins and Washington was denied on June 12, 1975. Because the appeal of Appellant Coleman and the consolidated appeal of Appellants Collins and Washington are based upon the same record and present similar issues, we have consolidated them for the purposes of this opinion.

I.

All three Appellants contend that the evidence at trial was insufficient to sustain the jury's verdict. That evidence revealed that on July 20, 1974, the decedent, Roger Williams, attended a company picnic in Gary, Indiana. Accompanying him were his wife, Mary Williams, their three children, Rosemary Young and her two sons, and one Gregory Cheeks. They stayed at the picnic for about six hours and left together between 5:00 and 6:00 p.m.

On the way home, the group stopped at a Gary store to purchase some soft drinks. While Gregory Cheeks went across the street to the store, a car pulled in front of the decedent's automobile. When Cheeks returned with the soft drinks, he was approached by two men from the car. The

two men argued with Cheeks regarding money they felt he owed them. The decedent interrupted the argument and persuaded Cheeks to get back into the decedent's car. The decedent told Cheeks to "leave the punks alone and get back into the car, you can't get blood out of a turnip." Mary Williams identified one of the two men as Appellant Washington. He wore a large white or beige hat. Rosemary Young testified that the two men were Appellants Washington and Collins.

As the decedent's car pulled away, it passed the Appellants' automobile. A window on the side of the car facing the Appellants shattered. The "glass went everywhere" and the decedent began driving faster. Rosemary Young, who had known the Appellants for some years, saw the Appellants' car following them. When the car arrived at the Williams home, the decedent drove into an alley behind the residence.

At about this same time, Mary Ann Jackson, a neighbor of the Williams family who lived near an entrance to the alley, saw a car drive the length of her block slowly, turn around, drive back, and park. The driver wore a white or beige hat. Two men emerged from the back seat of the car and ran toward her. One of them, identified as Appellant Coleman, carried "a rifle or shotgun." The other man was identified as Appellant Collins. Appellant Coleman broke the heel of one of his shoes as he ran. He stopped, kicked both shoes off, and continued running in his stocking feet. Mrs. Jackson later retrieved the shoes and gave them to police.

As the occupants of the Williams car started to emerge, several shots were heard. One of them struck and killed the decedent. Rosemary Young was just leaving the car when she heard the shots. She reentered the car and shielded the children in the back seat. Mrs. Williams saw her husband fall, but could not determine the direction from which the shots came. Mrs. Jackson also heard the shots and then saw Appellants Coleman and Collins reappear from the alley and drive off. She phoned the police.

The first police officer to arrive at the scene broadcast a description of the suspects and their car. Another policeman heard the broadcast, saw a car which fit the description, and gave chase. The pursued automobile eventually stopped, and its three occupants fled to some nearby buildings. One of them carried "what appeared to be a sawed-off shotgun or some type of weapon."

The three Appellants were found and arrested a short time later. Appellant Coleman was found under a staircase with a .30 caliber carbine. Police later noticed that he had no shoes. When Appellant Washington was arrested, he was wearing a large white hat. Two shell casings were found in the alley behind the Williams home. Ballistics tests revealed that they could have been fired from the weapon found in the possession of Appellant Coleman. The bullet which struck and killed the decedent had passed through the body and was not found.

We have written many times that this court, in determining the sufficiency of the evidence, does not judge the credibility of witnesses or weigh evidence. We look at only the evidence most favorable to the state and the reasonable inferences to be drawn from that evidence. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State,* (1975) 264 Ind. 14, 332 N.E.2d 103; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State,* (1971) 257 Ind. 477, 275 N.E.2d 538.

The evidence sufficiently established the elements of purpose, malice and premeditation necessary for a conviction for first degree murder. Ind. Code § 35-13-4-1 (Burns 1975). The deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm permits an inference that the accused was acting with purpose and malice. *White* v. *State,* (1976) 265 Ind. 32, 349 N.E.2d 156. Premeditation was amply shown by the Appellants pursuit of the victim's car and their apparent stalking of their

victim in the alley. The entire episode took place over a period of time. It was not sudden or impulsive. "The uttering of threats, and the seeking of an opportunity to kill deceased constitute evidence of premeditation." 15 I.L.E. *Homicide* § 123 at 362 (1959). Moreover, the jury had before it evidence of presence at the scene of the crime and subsequent flight, which may be considered as circumstantial evidence of guilt. *Frith* v. *State*, (1975) 263 Ind. 100, 325 N.E.2d 186. Presence at the scene in connection with other circumstances tending to show participation in the crime may be sufficient to sustain a conviction. *McGill* v. *State*, (1969) 252 Ind. 293, 247 N.E.2d 514.

It would thus appear that the evidence in this case was sufficient to sustain convictions for first degree murder for all three Appellants, let alone the convictions for the lesser included offense of second degree murder. Appellants Collins and Washington were apparently tried on a theory of accessory liability. An accessory, aider and abettor may be charged in the same manner as a principal. *Monhollen* v. *State*, (1962) 243 Ind. 486, 186 N.E.2d 573. An accessory is liable for acts of a principal although he did not personally participate in them. *Dozier* v. *State*, (1976) 264 Ind. 329, 343 N.E.2d 783. The evidence shows that both accessories here actively participated in the acts of the principal. Appellant Collins accompanied Appellant Coleman down the alley. Appellant Washington drove the car. The evidence was sufficient to sustain the convictions of all three men.

This conclusion is not altered by the contention of the Appellants that the evidence failed to show motive. Motive is not an element of any of the degrees of homicide. *Robinson* v. *State*, (1974) 262 Ind. 463, 317 N.E.2d 850. However, we think that the evidence revealed both the possibility of debt collection as a motive and the presence of spite and retribution. The jury could have concluded that the decedent was the intended victim or that he was killed in an attempt to

shoot Gregory Cheeks. "Where a person intends to kill one person and kills another, either by wounding another than the person he aimed or struck at or by mistaking the person killed for the person he intended to kill, if the requisite intent and malice existed toward the person intended to be killed, the law transfers them to the person killed, and the crime is murder." 15 I.L.E. *Homicide* § 14 at 299 (1959); *Napier* v. *State*, (1973) 260 Ind. 614, 298 N.E.2d 427.

## II.

Appellants Collins and Washington raise a second issue. It is their contention that they were denied their right to a speedy trial under Ind. R. Crim. P. 4(B) by the refusal of the trial court to grant a motion for discharge when they were not brought to trial within seventy days of their motions for early trial. The record discloses that these motions were filed on September 27, 1974. The seventy day period under Ind. R. Crim. P. 4(B) was thus set to expire on December 6, 1974. The ultimate commencement of trial on December 16, 1974, was clearly beyond the seventy day period. However, we think that the overruling of the motions for discharge was correct. Ind. R. Crim. P. 4(B) prescribes that discharge should not be granted ". . . where a continuance within said period is had on his [the defendant's] motion or the delay is otherwise caused by his act. . . ."

On December 3, 1974, trial counsel for the Appellants moved for a continuance for the purpose of filing additional motions. This was granted and a hearing was set for December 6, 1974. On that date, the motions were taken under advisement until December 9. A hearing on all other motions was set for December 12. The running of the seventy day period was thus tolled from December 3 at least through December 12. The motion to discharge filed by the Appellants on December 10 had no effect on this. It is the duty of a defendant to protest at the earliest possible time when he becomes aware that his trial date will be set

beyond the seventy day period of Ind. R. Crim. P. 4(B). When he fails to do so, he cannot complain. *Utterback* v. *State,* (1974) 261 Ind. 685, 310 N.E.2d 552. December 10 was not the earliest possible time to permit correction by the trial court.

The Appellants' trial thus started within the seventy day period, even if we assume that the period began running once more on December 13. We are not unmindful of the fact that the Appellants' motion for continuance was inspired by actions of the State. The Appellants' original charges by information were dismissed and the same charges reinstituted by indictment on November 15, 1974. This unusual procedure prompted the defense to seek a continuance in order to attack the indictment and seek additional discovery. However, while the Appellants were formally arraigned on December 3, they and their counsel admit receiving notice of the indictment on November 29. We acknowledge the unusual nature of the proceedings, but note that no question regarding the indictment was put to the trial court until December 3. Once the continuance was granted, the Appellants voiced no protest to its length. "The purpose of the rules is to assure early trials and not to discharge defendants." *Utterback* v. *State, supra* at 553-554. We find no error here.

The judgment of the trial court is affirmed.

All justices concur.

NOTE.—Reported at 354 N.E.2d 232.