**Thomas E. DOYLE, Jr., Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 4–782A233.

Court of Appeals of Indiana, Fourth District.

Sept. 11, 1984.

Rehearings Denied Oct. 5, 18, 1984.

Gerald R. Thom, Jasper, for appellant.

Linley E. Pearson, Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

After a trial by jury, Thomas E. Doyle, Jr. was convicted of fifteen counts of theft including five counts under each of three statutory definitions of theft: Ind.Code 35–17–5–3(1)(a), –3(1)(b), and –4 (1976). He appeals.

The pertinent facts are as follows. In 1965, five citizens of Daviess County formed the North Daviess Community School Building Corporation (hereafter the holding corporation) for the purpose of issuing tax free bonds to finance the construction of a new school for the North Daviess Community School Corporation (the school corporation). These five each purchased 200 shares of stock at the time of incorporation. The holding corporation then executed a trust indenture with the State Bank of Washington (hereafter the trustee). Pursuant to this indenture, the trustee received the proceeds of bonds issued by the holding corporation and used the money to build the proposed school. The new school was then leased to the school corporation, which paid rent to the trustee. Under the indenture, these rents were deposited into a sinking fund, from which the bond holders were to be repaid.

The defendant, Thomas Doyle, did accounting work for the holding corporation during construction of the new school. In September of 1974, after the building was finished, Doyle approached the five shareholders with a proposition. Because the trustee was administering the bond and rental funds, the holding corporation was virtually dormant at this time. Doyle told the shareholders that it would be easier for him to file the required tax forms and annual reports if he controlled all of the corporation's stock. Thus, he proposed to buy each shareholder's stock, giving each of them in exchange an interest free note for $200—the amount they invested—payable in twenty years. Doyle advised them that this method of payment would entitle them to deduct a loss of $175 on their current income taxes.

The shareholders agreed and endorsed their shares over to Doyle. In return, each

was given a note for $200. Although the maker of these notes was the holding corporation, the shareholders understood that Doyle himself was purchasing their shares. Doyle assured them he would put $1000 into the corporation to cover these notes when they came due.

Several months later, in the spring of 1975, Doyle amended the holding company's articles of incorporation to list him as the corporation's sole shareholder and director, and its president. He also changed the corporation's name to ISHCO, Inc. In May 1975, Doyle wrote the trustee and requested that all excess funds in the sinking fund beyond those needed to pay principal and interest to bondholders be turned over to him as president of ISHCO. This request was based on a provision in the indenture entitling the holding corporation to possession of all such excess funds. On advice of counsel, the trustee transferred $57,257.78 in excess funds to ISHCO in June 1975. In July 1976, the trustee gave ISHCO an additional $1,473.83. Doyle deposited these funds in ISHCO's checking account at Peoples Bank in Washington.

On June 12, 1975, Doyle drafted and signed the following contract between ISHCO and Thomas E. Doyle, CPA, Inc., an accounting corporation owned solely by Doyle:

Contract for services dated this 12th day of June, 1975 between ISHCO, Inc., buyer, and Thomas E. Doyle, CPA, Inc., Seller.

Whereas, Seller has acquired substantial data concerning Indiana school building corporations; and

Whereas, Buyer wishes to purchase the data and services of seller; and,

Whereas, Seller has incurred substantial expense in acquiring said data; and

Whereas, Seller is the only known source of said information.

It is hereby agreed:

That, Thomas E. Doyle, CPA, Inc. will provide to ISHCO, Inc. all such data that has been acquired and will be acquired; and

That, Seller will continue seeking additional data from every available source; and

That, Seller will provide all accounting and bookkeeping services for buyer beginning Jan. 1, 1975 and ending on December 31, 2000; and

That, Buyer will pay to Seller at the rate of $2,000.00 per year for said services; and

That, Buyer will pay to seller an additional fee of fifty per cent of all income received from the use of said data; and

That, Buyer will pay to Seller a minimum fee of $30,000.00 for said data; and

That, Seller may at any time after delivery of said data to buy [sic] request and be paid advance of not more than $50,000.00; and

That, said fees are to be reduced by the amount of any fees; and

That, Seller hereby acknowledges receipt and possession of said data.

Thereafter, ISHCO issued five checks to Thomas E. Doyle, CPA, Inc. as follows:

| | | |
|---|---|---|
| June 17, 1975 | – | $20,000.00 |
| July 2, 1975 | – | $20,000.00 |
| July 29, 1975 | – | $17,000.00 |
| September 22, 1975 | – | 500.00 |
| July 2, 1976 | – | 1,400.00 |

Doyle was subsequently charged with fifteen counts of theft in indictments treating each of these five transfers as a violation of three distinct theft statutes, as noted above. The jury found Doyle guilty on all fifteen counts, and the court entered judgment accordingly.

Doyle now appeals, raising seven issues:
1. Whether there was sufficient evidence to support Doyle's convictions;
2. Whether Doyle was entitled to a mistrial because the prosecution was not conducted by the prosecutor of Dubois County, to which the case was venued;
3. Whether the trial court erred in denying Doyle's motion for a mistrial based on prejudicial publicity, without polling the jury;
4. Whether the trial court erred in admitting multiple photocopies of two State exhibits;

5. Whether the trial court erred in denying Doyle's motion for a mistrial based on prosecutorial misconduct;

6. Whether the trial court erred in giving several instructions tendered by the State; and

7. Whether the trial court erred in refusing to give several instructions tendered by Doyle.

Doyle first contends there was insufficient evidence to support his convictions under the three statutory provisions he allegedly violated. In reviewing the sufficiency of the evidence we neither weigh the evidence nor judge credibility. We consider only the evidence most favorable to the State, and we will affirm if there is substantial evidence on each element upon which the jury might reasonably find the defendant guilty beyond a reasonable doubt. *Williams v. State*, (1982) Ind., 433 N.E.2d 769; *Harris v. State*, (1981) Ind., 425 N.E.2d 112. With this standard in mind, we will separately analyze the three different statutory provisions under which Doyle was convicted.

■■■ Counts one through five against Doyle were based on Ind.Code 35–17–5–3(1)(a) and –3(2)(a) (1976), which read as follows:

A person commits theft when he (1) knowingly:

(a) obtains or exerts unauthorized control over property of the owner ... and

(2) either:

(a) intends to deprive the owner of the use or benefit of the property ...

Doyle does not dispute that he exerted control over funds that were the property of ISHCO, Inc. Rather, he contends there was no evidence this control was "unauthorized."

The statute under which Doyle was convicted and the cases applying it do not define the term "unauthorized." Our present theft statute, however, provides in relevant part that control over another person's property is "unauthorized" if it is exerted:

(1) without the other person's consent;

(2) in a manner or to an extent other than that to which the other person has consented;

. . . . .

(4) by creating or confirming a false impression in the other person;

(5) by failing to correct a false impression that the person knows is influencing the other person, if the person stands in a relationship of special trust to the other person; [or]

(6) by promising performance that the person knows will not be performed ...

Ind.Code 35–43–4–1(b) (1982). The Indiana Criminal Law Study Commission comments accompanying this section say this definition of unauthorized control was meant to cover all the acts constituting theft under Ind.Code 35–17–5–3 (1976), the section at issue here. Thus, we do not believe the term "unauthorized control" in Ind.Code 35–17–5–3 should be construed to penalize acts not described in the new statutory definition.

Under this new definition, Doyle clearly did not exert unauthorized control over ISHCO's property. First, there was no evidence that he transferred the disputed funds without ISHCO's consent or in a manner other than that to which ISHCO had consented. Rather, as the sole shareholder, officer, and director of ISHCO, Doyle clearly consented to the transfer. Nor was there any evidence that Doyle accomplished the transfer of ISHCO funds to his accounting corporation by creating, confirming, or failing to correct a false impression in ISHCO. Further, there was no showing Doyle received ISHCO funds by promising performance he knew would not be performed.

The crux of the State's argument is that, by transferring ISHCO funds to his accounting firm, Doyle violated a fiduciary duty and certain restrictions placed on ISHCO by statute and by its articles of incorporation. Such acts, however, do not constitute an exercise of "unauthorized control" as our legislature has defined it. Bound as

we are to construe criminal statutes strictly against the State, *Pennington v. State*, (1981) Ind., 426 N.E.2d 408, we find that there was insufficient evidence to support a finding that Doyle exerted unauthorized control over ISHCO's property.

■ Counts six through ten against Doyle were based on Ind.Code 35–17–5–4(1) (1976), which provides as follows:

> A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payment or other disposition, whether from such property or its proceeds commits theft if he deals with the property obtained as his own, and ... fails to make the required payment or disposition, ... except where the actor's obligation in the transaction was limited to a promise or other duty to be performed in the future without any present duty to reserve property for such performance.

The evidence clearly shows that Doyle, as sole owner of ISHCO, obtained ISHCO's property when he received the excess sinking fund money and placed it in ISHCO's checking account.

Doyle claims, however, he did not receive these funds "subject to a known legal obligation" to make any specific payment or dispositon. The State in this regard relies heavily on Ind.Code 21–5–11–2 (1982), which the State claims was applicable to ISHCO:

> No school corporation or corporations shall enter into a contract of lease, under the provisions of this act, except with a corporation organized under the laws of the state of Indiana solely for the purpose of acquiring a site, erecting thereon a suitable school building or buildings, leasing the same to such school corporation or corporations, collecting the rentals therefor and applying the proceeds thereof in the manner herein provided. Such lessor corporation shall act, entirely without profit to the corporation, its officers, directors and stockholders but shall be entitled to the return of capital actually invested, plus interest or dividends on outstanding securities or loans, not to exceed five per centum (5%) per annum and the cost of maintaining its corporate existence and keeping its property free of encumbrance. *Upon receipt of any amount of lease rental by such lessor corporation over and above the amount necessary to meet incidental corporate expenses and to pay dividends or interest on corporate securities or loans, such excess funds shall be applied to the redemption and cancellation of its outstanding securities or loans as soon as may be done.*

(Emphasis added). The State argues that the funds Doyle transferred to his accounting corporation were "excess funds" under the emphasized part of this section. The State thus contends Doyle was obligated to use this money to redeem the corporation's outstanding bonds.

In response, Doyle argues this statute did not apply to ISHCO. ISHCO's articles of incorporation, however, clearly state that the corporation was organized for the sole purpose of building a school, leasing it, and applying the rent payments in the manner prescribed in Chapter 273 of the Acts of 1947, of which Ind.Code 21–5–11–2 is one section. The lease between ISHCO and the school corporation is also expressly governed by this act. Further, an expert on school corporation bonds testified that ISHCO was governed by the 1947 act. Thus, Ind.Code 21–5–11–2 clearly governed ISHCO's disposition of the rental income it received.

Doyle also argues that the State did not prove the funds he transferred were subject to the restrictions of Ind.Code 21–5–11–2, which only applies to the disposition of rental income. Doyle points out that, in addition to rent, the sinking fund contained accrued interest and bond proceeds left over from construction of the school. The record shows, however, that these other funds amounted to less than $27,000. Thus, the $58,900 transferred to Doyle necessarily included over $30,000 of rental income, the disposition of which was governed by the statute.

Doyle further claims his actions did not violate any obligation imposed by Ind.Code 21–5–11–2, because the statute required him to redeem bonds only if ISHCO had funds in excess of "the amount necessary to meet incidental corporate expenses." He argues that the $58,900 paid by ISHCO to his accounting firm was a legitimate corporate expense, leaving no excess funds with which to redeem bonds.

Testimony favorable to the State, however, showed that ISHCO's only corporate needs—and thus its only legitimate "incidental expenses"—were for basic accounting services, including preparation and filing of annual reports and tax statements to maintain ISHCO's tax exempt status. The testimony of another CPA and evidence of Doyle's own charges for such services make it clear that a reasonable fee for providing these services for the rest of ISHCO's corporate existence would be less than $58,000.

Moreover, Doyle's own testimony indicated that at least $30,000 of the money he transferred to his accounting firm was not in return for accounting services, but for "data concerning Indiana school building corporations," as provided in the contract between ISHCO and Doyle's accounting company. This data included Doyle's legal research on the state laws and IRS regulations governing school building corporations. It also included a cross-indexed listing of similar corporations and their shareholders. Doyle testified that he used this listing of school building corporations and their shareholders to contract such shareholders with a proposition that their corporations be merged into ISHCO, relieving them of the burden of overseeing corporations that yielded no profit. When this plan proved fruitless, Doyle used his information to seek rewards from the IRS for "turning in" holding corporations that had failed to make required annual filings.

These ventures were clearly beyond the scope of ISHCO's corporate purpose—leasing a school building and paying off bonds. Thus, the money paid to Doyle's accounting firm for "data" was not spent on ISHCO's incidental expenses, as Doyle claims. Although Doyle was arguably entitled to pay his accounting firm a reasonable fee for routine services to ISHCO, the rest of the sinking fund money received by ISHCO was "excess funds" under Ind.Code 21–5–11–2. As ISHCO's sole director and shareholder, Doyle had an obligation under this statute to use these funds to redeem outstanding bonds as soon as possible.

Doyle clearly knew of this statutory obligation. On May 17, 1975, before releasing the excess funds to Doyle, the trustee sent him a letter containing an attorney's description of Doyle's rights and duties, including the duty under Ind.Code 21–5–11–2 to use excess funds to redeem bonds. Doyle responded with a letter stating that he was aware of the legal restrictions and intended to comply with them fully. It is also clear that Doyle did not use the excess funds to redeem ISHCO's bonds "as soon as may be done." Doyle had the opportunity to redeem bonds every year on July 1 with funds the trustee transferred to ISHCO; Doyle never did so.

The final element the State was required to prove under Ind.Code 35–17–5–4 was that Doyle dealt with the property obtained from ISHCO as his own. Doyle contends he transferred the ISHCO funds to his accounting firm as part of a legitimate business transaction, beneficial to ISHCO. If this were true, the evidence would probably be insufficient to prove Doyle dealt with ISHCO's funds as his own. As already noted, however, there was evidence that the contract between ISHCO and Doyle's firm was for services and "data" of no use to ISHCO. The jury was entitled to find that ISHCO got nothing in return for most of the $58,900 it transferred to Thomas E. Doyle, Inc., a corporation owned solely by Doyle. The evidence before the jury was sufficient to prove that Doyle dealt with ISHCO's funds as his own, in violation of his statutory duty to use all excess funds to redeem the corporation's bonds. This was sufficient to support Doyle's convictions for theft under Ind.Code 35–17–5–4 (1976).

Counts eleven through fifteen against Doyle were based on Ind.Code 35–17–5–3(1)(b) and –3(2)(a), which provide:

A person commits theft when he (1) knowingly:

. . . . .

(b) obtains by deception control over property of the owner . . . and

(2) either:

(a) intends to deprive the owner of the use or benefit of the property . . . .

The theft statute applicable here defined "deception" in pertinent part as follows:

"Deception" means knowingly to:

(a) create or confirm another's impression which is false and which the actor does not believe to be true; or

(b) fail to correct a false impression which the actor previously has created or confirmed; or

(c) prevent another form acquiring information pertinent to the disposition of the property involved; or

. . . . .

(e) fail to correct a false impression which he knows to be influencing another to whom he stands in a relationship of special trust and confidence; or

(f) promise performance which the actor does not intend to perform or knows will not be performed.

. . . . .

Deception may relate to the fact, value, law, opinion or intention.

Ind.Code 35–17–5–13(3) (1976). Under this definition, Doyle did not "obtain by deception control over property of the owner." Doyle did not in any sense create, confirm, or fail to correct a false impression held by ISHCO. Nor was there any evidence that Doyle received ISHCO's funds by promising performance which he did not intend to perform. Rather, although Doyle's promised services to ISHCO were mostly worthless to the corporation, the evidence shows Doyle performed the services promised in the contract.

■ The State argues that Doyle's contract with ISHCO for services "legally de-

ceived" the corporation since Doyle's services were worth far less to ISHCO than it paid. Thus, the State claims Doyle created a false impression in the "mind" of the corporation itself, even though no human director or shareholder of ISHCO was deceived. This argument takes the fiction of corporate personhood to the point of absurdity and contravenes the plain meaning of the statute defining "deception."

■ Also implausible is the State's argument that Doyle's convictions are supported by evidence that Doyle deceived the holding corporation's original shareholders. As the State points out, two of the five shareholders testified that when Doyle met with them and bought their stock in September 1974 he indicated he was representing the North Daviess Community School Corporation. This was not true. There was no evidence, however, that this incidental misrepresentation influenced the shareholders' decision to sell Doyle their stock. Further, we note that only a tenuous chain of causation links this misrepresentation to Doyle's misappropriation of ISHCO's funds months later. We do not believe that evidence showing Doyle used deception in acquiring the corporation in 1974 is equivalent to proof that his transfer of ISHCO funds to his accounting firm in 1975 was accomplished by use of deception. We accordingly find there was insufficient evidence to support Doyle's five convictions of theft by deception.

■ Doyle next claims he was entitled to a mistrial because the prosecutor of Dubois County, to which this case was venued, did not conduct the prosecution. The prosecutor of Daviess County, in which Doyle was originally charged, continued to prosecute the case after it was venued to Dubois County. This was clearly proper. "[I]t is the duty of the prosecuting attorney to prosecute all cases initiated by him to their termination and upon change of venue, to follow such cases and actively assist in the prosecution thereof, as the regular prosecuting attorney of the court trying the same shall direct." *State ex rel. Neeriemer v. Daviess Circuit Court*, (1957) 236

Ind. 624, 631, 142 N.E.2d 626, 629. Doyle acknowledges this rule, but argues that his prosecution was nevertheless improper because "the regular prosecuting attorney" of Dubois County did not "direct" the prosecution. We find no error. First, Doyle cites no authority for the proposition that a mistrial must be granted when the local prosecutor fails to "direct" the prosecution of a case venued in. Further, under the rule stated in *State ex rel. Neeriemer*, the Dubois County Prosecutor could properly have refused an active role in Doyle's trial and directed the Daviess County Prosecutor to continue the prosecution unaided. The Daviess County Prosecutor to continue the prosecution unaided. The Daviess County Deputy Prosecutor who tried this case told the court he had discussed the case with the Dubois County Prosecutor and had declined his services. Thus, the local prosecutor was aware of this case and chose not to join in its prosecution. The decision in *State ex rel. Neeriemer* requires nothing further. The trial court properly denied Doyle's motion for a mistrial.

■ Doyle also argues the trial court erred in denying his motion for a mistrial, based on prejudicial publicity, without allowing him to question the jurors individually about their exposure to this publicity. The law on this point is clear:

> Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively to determine who has been exposed.... If any of the jurors have been exposed, [they] must be indi-

vidually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof.

*Lindsey v. State*, (1973) 260 Ind. 351, 358–59, 295 N.E.2d 819, 824. Under this rule if the disputed publicity was unlikely to have prejudiced the jury the court may refuse to grant a mistrial without interrogating the jury. *Id.; see Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042, *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662.

■ Here the content of the disputed publication—a brief article on the trial in the local paper—was unlikely to prejudice the jurors even if they had read it. The article merely stated that jury selection was likely to take two days and described the charges against Doyle in language taken from the indictments. As the indictments were read to the jury during preliminary instructions, an article stating the same allegations could hardly be considered improper and prejudicial publicity. Under *Lindsey, supra*, the trial court properly denied Doyle's motion for a mistrial without questioning the jurors about their exposure to this article.

■ The trial court admitted in evidence the trust indenture between the trustee and the original holding corporation and the corporation's articles of incorporation. The State then offered twelve copies of both exhibits, one for each juror. Doyle contends these photocopies were improperly admitted absent testimony that they were true copies of the original documents. Generally, documents are admissible only upon a foundational showing that they are what they purport to be. *Kern v. State*, (1981) Ind., 426 N.E.2d 385; *City of Indianapolis v. Heeter*, (1976) 171 Ind.App. 119, 355 N.E.2d 429. The only foundation for the exhibits at issue here was the prosecutor's unsworn statement that they were accurate copies of the original documents.[1]

1. The prosecutor apparently believed he could not testify under oath as to the authenticity of these copies. However, under Indiana's Code of Professional Responsibility, Disciplinary Rules 5–101 and 5–102, a lawyer may testify in a case he is trying "[i]f the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony." D.R. 5–101(B)(2). Under this rule, the prosecutor here

It is doubtful whether a trial court may rely upon such an unsworn statement, albeit by an "officer of the court," as if it were evidence. Nevertheless, we cannot see how Doyle was harmed by the admission of these unauthenticated copies. To the extent that these copies were accurate copies of the trust indenture and articles of incorporation already in evidence they were cumulative evidence, which is generally considered harmless. *Jackson v. State,* (1980) 273 Ind. 49, 402 N.E.2d 947. Accordingly, the disputed copies could have harmed Doyle only if they were materially different from the originals. Doyle makes no allegation that the copies of the articles of incorporation differ from the original. As to the trust indenture, Doyle complains that the copies contain markings not included in the original. These markings, however, consist only of underlining and brackets around several paragraphs in the indenture, most of which have no bearing on the issues at trial. Moreover, the trial court admonished the jurors to disregard these markings. On these facts, we find any error in the admission of these exhibits was clearly harmless. *See Ball v. State,* (1980) Ind.App., 406 N.E.2d 305.

▇▇▇▇ Doyle also claims the court erred in denying his motion for a mistrial based on prosecutorial misconduct. At trial, Doyle's attorneys several times pointed out that the funds Doyle allegedly stole were actually transferred to a corporation—Thomas E. Doyle CPA, Inc. The prosecutor, in response, tried to "clarify" the issue for the jury, saying "We ... also have the right to charge either a corporation or its agent or its officer and in this case ... since we're dealing with a one man corporation ... we have elected to go after the party who we feel is truly at fault...." Doyle argues that, by this statement, the prosecutor was stating to the jury his personal opinion as to Doyle's

guilt. It is misconduct for a prosecutor to state a personal opinion as to a defendant's guilt, and such a statement may require the court to grant a mistrial. *Johnson v. State,* (1983) Ind.App., 453 N.E.2d 365; *Flynn v. State,* (1978) 177 Ind.App. 360, 379 N.E.2d 548. In this case, however, upon Doyle's objection to the prosecutor's remark, the court struck the remark from the record and admonished the jury to disregard the statements of counsel. Such an admonishment is usually presumed to cure any prejudice to the defendant, absent a showing that the misconduct had a discernable effect on the jury's verdict despite the admonition. *Davis v. State,* (1981) Ind., 418 N.E.2d 203. Even assuming the prosecutor's comment here was improper, we are not persuaded it was so inflammatory as to affect the jury's verdict despite the trial court's admonition. The trial court properly denied Doyle's motion for a mistrial.

▇▇▇▇ Next Doyle claims the trial court erred in giving seven of the State's final instructions. The first of these instructions informed the jury of the provisions of Ind.Code 21–5–11–2 (1982), *supra,* which governs non-profit school holding corporations. Doyle argues this instruction was erroneous because the evidence showed Ind.Code 21–5–11–2 was inapplicable to ISHCO. It is error to give instructions that are not applicable to the evidence at trial. *McDonald v. State,* (1976) 264 Ind. 477, 346 N.E.2d 569. There was testimony in this case, however, that the holding corporation was subject to the requirements of Ind.Code 21–5–11–2. The court did not err in instructing the jury as to this statute.

▇▇▇▇ Doyle also challenges the giving of State's instructions five, seven, and nine, which addressed principles of corporate law.[2] Doyle contends these instructions

---

was clearly permitted to testify to the authenticity of the photocopies he was offering.

**2.** These instructions read as follows:

Instruction Five
You are instructed that a statute of the State of Indiana reads as follows:
No professional corporation may do any act which is prohibited to be done by individual persons licensed to practice that particular profession.

were "mere abstract statements of law" and that, as a result, the court erred in giving them. We disagree. The giving of instructions containing abstract statements of law is disapproved only because such instructions may confuse or mislead the jurors, who are left uninformed as to how the rule stated applies to the case before them. *Board of Commissioners v. Klepinger,* (1971) 149 Ind.App. 377, 273 N.E.2d 109; *Hill v. Jennings,* (1971) 149 Ind.App. 241, 271 N.E.2d 473. Thus, giving such instructions is reversible error only if it appears likely that the jurors were confused as to the law under which they were to decide the defendant's guilt or innocence. *See Brewer v. State,* (1969) 253 Ind. 154, 252 N.E.2d 429.

 Here, instructions five and nine clarified Doyle's relationship to ISHCO and Thomas E. Doyle CPA, Inc. It is difficult to see how such instructions could confuse the jurors as to the law under which they were to decide Doyle's guilt or innocence. Instruction seven, on the other hand, could conceivably have led some jurors to believe that they could find Doyle guilty based on evidence that he made an advancement to himself from ISHCO's funds for future services. Any such misapplication of the law, however, would have required the jurors to ignore the court's clear instructions on the elements the State was required to prove to convict Doyle. Thus, although instruction seven should have explained

how the statute quoted applied to Doyle's case, we are not persuaded that it was so misleading as to entitle Doyle to reversal.

 Doyle further objects to State's instruction twelve, regarding character witnesses' testimony. Doyle, however, makes no argument at all about this instruction, aside from reproducing his objection to it at trial. He has waived any error. *Wireman v. State,* (1982) Ind., 432 N.E.2d 1343.

 Also, Doyle claims the trial court erred in giving the State's instruction fifteen regarding the State's burden of proof. Doyle claims this instruction, stating that incidental or subsidiary facts need not be proven beyond a reasonable doubt, was misleading and was an incorrect statement of the law. A nearly identical instruction, however, has been held to state the law correctly. *Hartwell v. State,* (1974) 162 Ind.App. 366, 321 N.E.2d 222. The court properly gave this instruction.

 Another instruction challenged by Doyle was State's instruction seventeen, containing the statutory definitions of terms used in the theft statutes at issue. Doyle essentially claims some parts of these definitions were inapplicable to the evidence at trial. Generally, it is a matter for the trial court's discretion whether to give an instruction including definitions. *Erickson v. State,* (1982) Ind., 439 N.E.2d 579; *McNary v. State,* (1981) Ind., 428 N.E.2d 1248. Moreover, the court should

---

**Instruction Seven**
There was in force a statute of the State of Indiana which provided:
No corporation shall make any advancement on account of services to be performed in the future or shall make any loan of money or property to any officer or director of the corporation

**Instruction Nine**
There was in force a statute of the State of Indiana which provided:
The officers of a corporation shall consist of a president, a secretary and a treasurer, and such other officers as may be prescribed by the by-laws, each of whom shall be chosen by the board of directors at such time and in such manner and for such terms as the by-laws may prescribe. Each officer shall hold office until his successor is chosen and qualified. The president shall be chosen from

among the directors. If the by-laws so provide, any two (2) or more offices may be held by the same person, except that the duties of the president and secretary shall not be performed by the same person.
All officers and agents of the corporation as between themselves and the corporation shall have such authority and perform such duties in the management of the property and affairs of the corporation as may be provided in the by-laws, or, in the absence of such provision, as may be determined by resolution of the board of directors. Any officer or agent may be removed by the board of directors whenever in its judgment the best interest of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an officer or agent shall not of itself create contract rights.

give definitions of terms with a technical meaning of which the jurors may be unaware. *McNary v. State, supra.* Here, the court was required to instruct the jurors as to the theft statutes Doyle allegedly violated. Thus, it was clearly appropriate to define for the jury the technical terms included in these statutes. The trial court did not abuse its discretion in giving State's instruction seventeen.

■■■■ Finally, Doyle argues the trial court erred in refusing to give several of his tendered instructions. Defendant's instruction three read: "You are instructed that you have no right to find the defendant guilty only for the purpose of deterring others from committing crimes." This was essentially a negative instruction, telling the jury what was not at issue in the case. Such instructions are usually superfluous and may properly be refused when the jury has been "instructed on the positive aspects of the same issue." *Dayton Walther Corp. v. Caldwell,* (1980) 273 Ind. 191, 402 N.E.2d 1252, 1261. The court properly refused this instruction.

■■■ Doyle also challenges the refusal of his instruction thirteen, discussing reasonable doubt. This instruction was nearly identical to defendant's instruction four, which the court gave. Thus, the court properly refused it. *See Daniels v. State,* (1980) Ind., 408 N.E.2d 1244.

■■■ Defendant's instruction seventeen read:

> You are instructed that the School Building Leasing Act for profit reads in part as follows:
>
>> Any school corporation or corporations may enter into a contract of lease under the provisions of this act [21–5–12–1—21–5–12–11] with a corporation organized under the laws of the state of Indiana or duly admitted to do business in the state of Indiana.

This instruction was taken from Ind.Code 21–5–12–2, a statute governing for-profit school holding corporations; thus, it was inapplicable to ISHCO, a non-profit holding corporation. Further, even if this statute did apply to ISHCO, nothing in it is relevant to the issues here. The statute merely states that a school corporation may lease a school from a corporation organized under Indiana law or admitted to do business in Indiana. The court did not err in refusing this instruction.

■■ Last, Defendant's tendered instruction eighteen discussed the duties of jurors in deliberation. The substance of this instruction was adequately covered by the court's final instructions on reasonable doubt and jury deliberations. The court properly refused it. *Daniels v. State, supra.*

Doyle's convictions for theft by deception and by exerting unauthorized control are reversed. In all other respects, the trial court's judgment is affirmed.

MILLER, P.J., concurs.

CONOVER, J., concurs in result with opinion.

CONOVER, Judge, concurring.

I concur in the result reached by the majority as to Doyle's theft conviction for failure to make required disposition of property under IND.CODE 35–17–5–4, but believe my reasons for so doing merit discussion.

An indictment must be specific enough to apprise the defendant of the crime with which he is charged. *Roddy v. State,* (1979) Ind.App., 394 N.E.2d 1098, 1104; *Carter v. State,* (1972) 155 Ind.App. 10, 18, 291 N.E.2d 109, 113. The State must prove beyond a reasonable doubt every material element of the crime with which the defendant is charged. *See, Dillon v. State,* (1971) 257 Ind. 412, 416, 275 N.E.2d 312, 314. A defendant is denied due process if the proof at trial convicts him of a crime other than the one alleged in the indictment. *See, Roddy, supra,* 394 N.E.2d at 1104.

The State here indicted Doyle individually for theft under IND.CODE 35–17–5–4. The gravamen of the crime of theft by failing to make required disposition of

property subject to a known legal obligation is the defendant dealt with the property *as his own*. *See, Wells v. State*, (1980) Ind.App., 401 N.E.2d 779, 780–781; *State v. Gates*, (1979) Ind.App., 394 N.E.2d 247, 248; *Miller v. State*, (1972) 153 Ind.App. 54, 60, 285 N.E.2d 843, 846–847. Even when the evidence in this case is viewed, as it must be, in the light most favorable to the State, there is no direct or circumstantial evidence nor reasonable inference arising from the evidence Doyle personally received ISHCO funds or put such funds to his personal use. Thus, as the State admitted on oral argument, there is a total failure of proof on this material element of the crime which warrants reversal unless more appears.

Under the evidence, Doyle was the sole stockholder and president of ISHCO, and the sole stockholder and president of the Doyle professional corporation. In all of these transactions, he acted for and on behalf of each corporation as an officer thereof. The money paid ISHCO was then paid by it into the Doyle professional corporation treasury, not to Doyle personally. There the evidence stops. There is no direct evidence nor reasonable inference arising from the evidence Doyle personally received or used any of these funds.

The majority treats ISHCO and Doyle's professional corporation as mere "alter egos" of appellant Doyle, thus, the piercing of both corporate veils to find Doyle guilty of this brand of theft is warranted. I disagree.

A corporation is a distinct and separate legal entity, legislatively created, separate and distinct from its stockholders. *Madding v. Indiana Department of State Revenue, Gross Income Tax Division*, (1971) 149 Ind.App. 74, 84, 270 N.E.2d 771, 776; *Hart Schaffner and Marx v. Campbell*, (1942) 110 Ind.App. 312, 320, 38 N.E.2d 895, 899; *Department of Treasury of Indiana v. Crowder*, (1938) 214 Ind. 252, 254–255, 15 N.E.2d 89, 91; 6 I.L.E. *Corporations* § 1, p. 431. A corporation maintains its separate legal existence even though one shareholder owns all its stock. *See, Amst-*

*ed Industries, Inc. v. Pollak Industries, Inc.*, (1978) 65 Ill.App.3d 545, 549, 22 Ill. Dec. 73, 77, 382 N.E.2d 393, 397; *see also, Benson v. Warble*, (1970) 146 Ind.App. 307, 310, 255 N.E.2d 230, 232 (separate corporate entity exists even though one person owns majority of stock). The legal fiction of a separate corporate entity will be disregarded only where the corporation becomes the "alter ego" of the individual. As such, the interests of the individual and the corporation are united to the extent the distinction between the two no longer exists. *See, Merchants National Bank and Trust Co. of Indianapolis v. H.L.C. Enterprises, Inc.*, (1982) Ind.App., 441 N.E.2d 509, 514. "Alter ego" is an equitable doctrine. *Towers v. Titus*, (Bankr.N.D.Cal.1979) 5 B.R. 786; *Stap v. Chicago Aces Tennis Team, Inc.*, (1978) 63 Ill.App.3d 23, 28, 20 Ill.Dec. 230, 234, 379 N.E.2d 1298, 1302.

This doctrine may be applied in civil cases between private litigants, but equity will neither aid nor obstruct criminal courts in the exercise of their jurisdiction. As *Corpus Juris Secundum* notes

> For the mere vindication of the criminal law and the enforcement of the public policy of the state, whether founded on moral or other consideration, the legal remedy by indictment and prosecution is fully adequate and particularly appropriate.

30 C.J.S. *Equity* § 53, p. 885. *See also,* 12 I.L.E. *Equity* § 13, p. 283. Applying the "alter ego" doctrine in this case *in favor of the State* without more, would be a denial of Doyle's right to due process. Each of the five Theft by Failure to Make Required Disposition counts alleged Doyle himself "obtained control over the property of ISHCO, Inc. ..." As noted above, there is a failure of proof on this element of all the crimes charged unless the "alter ego" doctrine is applied. The indictment or information must furnish the accused with such a description of the crime charged as will enable him to make his defense and avail of his conviction or acquittal for protection against further prosecution for the same offense. *Trotter v. State*, (1981) Ind., 429

N.E.2d 637; *Blackburn v. State*, (1973) 260 Ind. 5, 291 N.E.2d 686, *appeal dismissed* 412 U.S. 925, 93 S.Ct. 2755, 37 L.Ed.2d 152. The accused has a right to require that the crime alleged against him be charged with sufficient certainty to enable him to anticipate proof which would be adduced against him to enable him to meet it. *Harwei, Inc. v. State*, (1984) Ind.App., 459 N.E.2d 52.

Under the allegations in this cause Doyle could reasonably anticipate proof he himself, not the corporations, acted feloniously. He could not reasonably anticipate proof the corporations so acted and by discretionary application of the "alter ego" doctrine, he would be held personally accountable.

Nothing can be charged by implication. *Carter v. State*, (1973) 158 Ind.App. 27, 301 N.E.2d 524. A person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend. *McGairk v. State*, (1980) Ind.App., 399 N.E.2d 408; U.S. Constitution, Amend. 14. Without more, Doyle would be entitled to reversal for either (a) a failure of proof, or (b) because he was denied procedural due process.[1] Nevertheless, Doyle was individually liable based upon general principles regarding criminal liability of corporate officers.

A corporate officer is individually liable for criminal acts of the corporation performed in his official capacity if he participates in their commission or if the acts are committed under his authorization or control. *See, United States v. Sherpix, Inc.*, (D.C.Circuit 1975) 512 F.2d 1361, 1372; *United States v. Hare*, (7th Cir.1946) 153 F.2d 816, 818; *United States v. Griffin*, (S.D.Ind.1975) 401 F.Supp. 1222, 1224; *Bourgeois v. Common Wealth*, (1976) 217 Va. 268, 274, 227 S.E.2d 714, 718; 19 C.J.S. *Corporations* § 931, p. 364. The indictment's allegations gave Doyle sufficient notice because an accessory or aider or abettor may be charged in the same manner as a principal. *Coleman v. State*,

(1976) 265 Ind. 357, 354 N.E.2d 232; *Tolbert v. State*, (1982) Ind.App., 442 N.E.2d 718.

Given Doyle's control over the transactions between ISHCO and Doyle's professional corporation, the evidence is clearly sufficient to sustain his conviction as a participating corporate officer in his professional corporation's illegal activities. Thus, there was no fatal variance between pleading and proof. I concur in result on this issue.

In all other things, I concur with the majority.

---

1. Research reveals one criminal case wherein the "alter ego" doctrine was applied. I disagree with the result reached therein. *See, State v. Louchheim*, (1979) 296 N.C. 314, 329, 250 S.E.2d 630, 639–640, *appeal denied* 295 N.C. 470, 257 S.E.2d 435, *cert. denied*, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47, but note there the "alter ego" approach was specifically alleged in the indictment.