PATTERSON, Judge.
On November 16,1995, the appellant, Henry B. Sheffield, Sr., was convicted by a jury of theft of property in the first degree, a violation of § 13A-8-3, Code of Alabama 1975. He was sentenced to three years in prison, which sentence was suspended; he was placed on five years’ probation and ordered to perform 100 hours of community service. Additionally, he was ordered to pay court costs, to pay $69,797 in restitution (reduced by “any sums of money that have been paid to the insurance department or that will be paid to the insurance department or the insurance guaranteed association out of any fund[s] that are presently on deposit with any court or with any bank or any other financial institution that belongs to [the appellant]”), and to pay $50 to the Alabama crime victims compensation commission.
This case stemmed from the appellant’s redemption of three certificates of deposit totalling $83,254.93 owned by Gold Bond Life Insurance Company (hereinafter “Gold Bond”), an insurance corporation[1] of which the appellant was the president and sole shareholder.[2] He deposited $67,254.93 of the proceeds from the certificates into his personal account; he deposited $14,000 into the bank account of an insurance agency that he also owned; and he took $2,000 in cash. Within the next 30 days he wrote from his personal account checks in an amount exceeding $60,000. The record does not show whether these checks were for business or personal purposes.
*1283 The appellant raises two issues in this appeal: 1) Whether the state proved beyond a reasonable doubt that the appellant exerted control over property, unauthorized by the owner of the property; and 2) whether there is a fatal variance between the allegations of the indictment and the proof at trial. However, because of our disposition of Issue 1, we need not decide Issue 2.
The appellant was indicted by a grand jury in Clarke County on August 26, 1994. The indictment reads:
“Henry B. Sheffield, Sr., ... did knowingly obtain or exert unauthorized control over checks and/or lawful currency and/or coinage of the United States of America, a better description of which is to the Grand Jury otherwise unknown, the property of Gold Bond Life Insurance Company, a corporation, of the value of $67,254.93, with the intent to deprive the owner of said property, in violation of Section 13A-8-3 of the Code of Alabama.”
The appellant was found guilty by a jury.
“A verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust. Johnson v. State, 378 So.2d 1173 (Ala.1979); Duncan v. State, 436 So.2d 883 (Ala.Crim.App.1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984).”
Page v. State, 487 So.2d 999, 1006 (Ala.Cr.App.1986).
The appellant’s first contention is that he is not guilty of the theft of property in the first degree because, he argues, as the president and solé shareholder of Gold Bond, he authorized the cashing of the certificates of deposit. Section 13A-8-2(l) states: “A person commits the crime of theft of property if he ... [kjnowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property.” (Emphasis added.) Section 13A-8-3(a) states: “The theft of property which exceeds $1000 in value ... constitutes theft of property in the first degree.”
“The new definition of ‘theft’ specified in ■§ 13A-8-2, Code of Alabama 1975, as clarified by the definitions given in § 13A-8-1, Code of Alabama 1975, was not intended to and in our opinion does not create a broader range of ‘theft’ crimes. Instead it was intended to unify the old ‘theft’ offenses and thereby ‘eradicate the common law distinctions between the crimes of larceny, embezzlement and false pretenses’ so that ‘one accused of one form of theft [would not be allowed] to escape a legal sanction because of proof of a different form which interferes with property rights in essentially the same way.’ See Commentary to §§ 13A-8-2 through 13A-8-5, Code of Alabama 1975.”
Deep v. State, 414 So.2d 141, 147-48 (Ala.Cr.App.1982).
As shown above, before the adoption of the current theft statutes, Alabama prosecuted and punished theft offenses according to the specific details of the offense. The underlying alleged offense in this case most closely resembles the prior offense of embezzlement.
“Embezzlement is' a statutory criminal offense. Knight v. State, 152 Ala. 56, 44 So. 585; Adams v. State, 43 Ala.App. 281, 189 So.2d 354. The State proceeds on the theory that the petitioner violated Tit. 14, § 126, Code of Alabama, 1940, which provides:
“‘Any officer, agent, clerk, employee or servant of any incorporated company, association of persons, partnership, or municipal corporation, or agent, clerk, employee, servant, or apprentice, of any private person or persons, who embezzles or fraudulently converts to his own use, or the use of another, of fraudulently secretes with intent to convert to his own use, or the use of another, any money or property which has come into his possession by virtue of his office, agency, employment, or apprenticeship, shall be punished on conviction, as if he had stolen it.’ ”
Benefield v. State, 286 Ala. 722, 723-24, 246 So.2d 483, (Ala.1971).
The state asserts in its brief that the proceeds of the cashed certificates of deposit *1284 belonged to the corporation and were therefore a corporate asset, it also argues that the appellant, even if he were the sole shareholder, was not authorized to spend the proceeds for his personal benefit. We agree that the assets of a corporation are legally the assets of the corporation even if all of the shares of the corporation are held by one shareholder.
“ ‘The principle here stated, that the legal title to the property of the corporation is in the corporation itself, and not- the shareholders, cannot, of course, be questioned; and the authorities, for the most part, go so far as to hold that, even when the body ceases to be an association of persons by reason of the concentration of all the stock in the hands of one owner, the corporation is not thereby dissolved, and the sole stockholder does not thereby become legal owner of the property.’ ”
Warrior River Terminal Co. v. State, 257 Ala. 208, 211, 58 So.2d 100, 101 (1952) (quoting First Nat’l Bank of Gadsden v. Winchester, 119 Ala. 168, 24 So. 351, 352 (1898)).
While it is true that the legal title to -the assets of a corporation is held by the corporation and not the shareholders, the Alabama Supreme Court has recognized that shareholders have an the equitable interest in those assets.
“Stockholders owning all the shares of stock of a corporation are the equitable owners of its assets, Autauga Co-Operative Leasing Ass’n v. Ward, 250 Ala. 229, 33 So.2d 904; Boozer v. Blake, 245 Ala. 389(14), 17 So.2d 152; First Nat. Bank of Gadsden v. Winchester, 119 Ala. 168, 24 So. 351,—and, of course, they are interested in its liabilities.
“The acts and contracts of persons owning all the stock of a corporation may be considered as the acts and contracts of the corporation, where the effect is the same as though the corporation had acted as such. Birmingham Realty Co. v. Crossett, 210 Ala. 650, 654, 98 So. 895 (quoting from Cook on Corporations).”
Williams v. North Alabama Express, 263 Ala. 581, 583-84, 83 So.2d 330 (1955).
The Department of Insurance, in its brief filed at the request of this court, relies on the insurance statutes of Alabama[3] for the proposition that the appellant was not authorized to deal with the certificates in the manner in which he did. We note, however, that the Department of Insurance concedes that the certificates were the property of Gold Bond and were properly considered assets of that corporation. The state relies on the separate corporate existence of Gold Bond for the proposition that the appellant exercised unauthorized control over the assets of another. While we agree with the state that the assets did legally belong to Gold Bond and with the Department of Insurance that the appellant may have violated the insurance laws of Alabama by his actions, which contributed to the subsequent insolvency of Gold Bond, we disagree as, a matter of law, that the appellant violated § 13A-8-3. He could not be guilty of theft of property from a corporation that he alone owned. Although the appellant’s actions may constitute some other offense, such as a fraud on Gold Bond’s creditors or on its policyholders, they did not constitute a theft from Gold Bond.
We agree with the appellant that McCord v. State, 501 So.2d 520, 526-28 (Ala.Cr.App.1986), is dispositive of this issue:
“[I]n only one of the four cases did the State prove that the defendant exercised ‘unauthorized control’ over the soybeans. The State’s theory at trial was apparently that the defendant’s ‘unauthorized control’ over the soybeans was proved not only by the testimony of the farmers themselves,[4] but also by evidence that the defendant did not comply with certain statutory licensing and bonding requirements relating to grain dealers, and by evidence that he disposed of soybeans which the farmers had mortgaged to the Farmers . Home Administration. . In our judgment and for the *1285 following reasons, neither of these theories, even if proved, establishes ‘unauthorized control’ for purposes of a criminal prosecution for theft of the farmers’ soybeans.
“The Alabama Grain Dealers Act requires any person operating a grain elevator and engaged in the business of buying or receiving grain from producers for resale or for storage to obtain a license and to file a surety bond with the State Commissioner of Agriculture and Industries. Ala.Code § 1975, §§ 2-31-3 and 2-31-4. The Act does not apply to ‘persons who buy for cash; that is, those who pay producers at the time of purchase in United States currency or check or their equivalent.’ § 2-31-2.
“In its case in chief, the State introduced evidence, through the testimony of Carl D. Boyett, a field auditor with the State Agriculture Department, that on March 31, 1984, the defendant applied for an exemption from the licensing and bonding requirements of the Grain Dealers Act....
[[Image here]]
“... Although the State introduced no evidence of the fact that defendant did not subsequently obtain a bond or a license as required by statute, the defendant’s statements to Boyett in the summer of 1982 and his claim of exemption signed in March 1984 provide circumstantial evidence of the fact that he was never licensed or bonded.
“The fact that defendant had actual knowledge that unless he was licensed and bonded he was statutorily barred from accepting grain on any terms other than an immediate cash payment basis makes his dealing with the four farmers here on a ‘price later’ basis statutorily ‘unauthorized.’ See Kipp v. Goffe & Carkener, [144 Kan. 95, 58 P.2d 102 (1936) Kunlicensed and un-bonded grain dealer not authorized to store grain); Summers v. Peoples Elevator Co., 136 S.W.2d 81 (Mo.App.1939)(same).
“While the defendant could not legally engage in ‘price later’ transactions under the Grain Dealers Act, it is undisputed that the farmers themselves authorized the defendant to receive their soybeans on a ‘price later’ basis. Control unauthorized by regulatory statute is not equivalent to control unauthorized by the owner of the property, and will not alone satisfy the State’s burden of proving the element of ‘unauthorized control’ in a theft case. Doyle v. State, 468 N.E.2d 528 (Ind.App.1984).
“In Doyle, the accused was the accountant for a school building organization which established a holding corporation to issue trust indentures. The accused bought out the other shareholders of the holding corporation, set himself up as president and sole stockholder of the corporation and then contracted with his own solely-owned accounting firm for services. After numerous large checks were issued from the holding corporation to the accounting firm,_ the accused was indicted for theft of property. The Indiana Court of Appeals reversed his conviction and rendered judgment for him, reasoning that the State had not proved ‘unauthorized control’ over the corporation’s property because the accused, as sole shareholder of the corporation, had obviously consented .fo the transfer of funds to the accounting firm. Against the State’s contention that it had shown ‘unauthorized control’ because the accused’s acts violated the articles of incorporation of the holding company and violated several statutes relating to the duty of a fiduciary, the court held that ‘[s]uch acts, however, do not constitute an exercise of “unauthorized control” as our legislature has defined it. ’ 468 N.E.2d at 533. Section 35-43-4-1(b) of the Indiana Code, 1982, provided that control was unauthorized if it was exerted ‘(1) without the other person’s consent [or] (2) in a manner or to an extent other than that to which the other person had consented. [Emphasis added.]
“Although our theft statute contains no definition of ‘unauthorized,’ it defines ‘owner’ in § 13A-8-l(8) as ‘[a] person, other than the defendant, who has possession of or any other interest in the property involved, ... and without whose consent the defendant has no authority to exert control over the property.’ (Emphasis added.) Like the Indiana provision, our theft *1286 statute is based in part on the Model Penal Code, see Ala.Code § 13A-8-2 Commentary, which defines theft in terms of exercising ‘unlawful control’ over the property of another. Model Penal Code and Commentaries § 223.2(2) (A.L.I.1980). ‘The word “unlawful” ... implies the lack of consent or authority. ... ’ Id. at 166. The Alabama legislature, in our judgment, intended to adopt the rationale of § 223.2(1) of the Model Penal Code in defining theft as the exertion of control unauthorized, or unconsented to, by the owner of the property. Section 13A-8-1(7) provides the following:
“‘OBTAINS OR EXERTS CONTROL OR OBTAINS OR EXERTS UNAUTHORIZED CONTROL over property includes but is not necessarily limited to the taking, carrying away or the sale, conveyance or transfer of title to, or interest in, or possession of, property, and includes but is hot necessarily limited to conduct heretofore defined or known as common law larceny by tres-passory taking, common law larceny by trick, larceny by conversion, embezzlement, extortion or obtaining property by false pretenses.’
“Because the definition in § 13A-8-l(7) supra, incorporates many of the common law elements of larceny and larceny by trick, as well as false pretenses, and embezzlement, it is evident that the legislature did not intend to abandon altogether the concepts of an owner’s nonconsent, which was critical to a larceny prosecution, or consent obtained by fraud, which characterized larceny by trick, and false pretenses, or breach of trust which distinguished embezzlement. [Citations omitted.] Thus, we adopt the premise of the Model Penal Code § 223.2(1), and the reasoning of the Indiana Court of Appeals in Doyle v. State, supra, and conclude that our legislature intended that the control over property exercised by a defendant indicted under § 13A-8-2(1) must be unauthorized by the owner of the propérty, as that term is defined in § 13A-8-1(8), and not merely unauthorized by statute, regulation, or other applicable norm.
“At trial, the State introduced evidence through the testimony of Hulette Chambers, Madison County Supervisor for the Farmers Home Administration (FmHA) that the crops named in the Hereford and Rodgers indictments had been mortgaged to the FmHA, and that the FmHA notified the defendant of its security interest.
“The defendant’s sale of soybeans in which the FmHA held a security interest does not establish the element of ‘unauthorized control’ here because the indictments did not charge him with the theft of property belonging to the FmHA The indictments charged him with theft of property belonging to Hereford and Rodgers, respectively. Thus, any control unauthorized by the FmHA is simply immaterial to the offense for which the defendant was indicted.”
(Footnote omitted.)
Similarly, because a conviction under § 13A-8-3 requires “unauthorized control over the property of another,” the appellant was clearly not guilty when he exercised control over the assets of the coiporation of which he. was the sole shareholder. Moreover, because the appellant was indicted for theft of checks or currency from Gold Bond and not from any of the alleged policyholders who might have an interest in the assets of the company, the appellant could not have been convicted, under the indictment before us, of the theft of their property.
Because the state has failed to present sufficient evidence to prove a violation of § 13A-8-3 as charged in the indictment, the judgment in this case must be reversed and a judgment rendered for the appellant.
REVERSED AND JUDGMENT RENDERED.
All Judges concur.

. The record shows that the appellant testified at a hearing before the insurance commissioner that his company is “a very small mutual aid.”

. The Alabama Department of Insurance contends in its amicus curiae brief Sled at the request of this court, that the appellant is but one of seven shareholders of Gold Bond; however, the record, which governs our analysis, contains unrefuted assertions that the appellant is the sole shareholder.

. Specifically, §§ 27-14-1, 27-27-26, 27-30-1, 27-30-20, 27-30-30(a), 27-37-1, 27-41-5, 27-41-36.

. Three of the four farmers’ testimonies supported the defendant’s position that he was authorized by those farmers to sell their soybeans when he sold them. The fourth farmer's testimony clearly showed that the defendant sold that farmer’s soybeans without authorization from him.