JOHN R. DILLON *v.* STATE OF INDIANA.

[No. 1270S303.  Filed November 24, 1971.]

*E. Kent Moore,* of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

ARTERBURN, C. J.—Appellant was charged by affidavit with Theft by Deception on September 30, 1968.  Appellant pleaded not guilty to the charge and requested trial by jury.  Trial began on June 9, 1970, in the Superior Court of Tippecanoe County.  On June 11, 1970, the jury returned a verdict of

guilty as charged. Appellant was then sentenced to the Indiana State Prison for not less than one [1] nor more than ten [10] years, and disfranchised for one year and ordered to pay the costs of the action. On August 24, 1970, appellant filed a Motion to Correct Errors, which was amended on September 22, 1970. The Motion to Correct Errors was overruled on September 22, 1970, and it is from the ruling that this appeal was taken.

Briefly stated the facts relevant to the issues presented by the appellant are set forth in the following: On September 17, 1968, Clara E. Killian received a phone call from a man who identified himself as "Mr. Summers" of the Purdue National Bank. Mrs. Killian was told there was some confusion over a check she allegedly had written in the amount of one thousand five hundred [1,500.00] dollars, and the caller reviewed the current balance of her account. Mrs. Killian was asked to go to the bank, and was told that a bank car would come to pick her up. A short while later, Mrs. Killian received a second call, asking her help in catching a suspected check forger who had been tampering with her account. Mrs. Killian was told that the bank suspected that a man was carrying on an affair with the wife of a bank vice-president, and was desperate for money. To assist in catching the man, Mrs. Killian was told to cash a check for one thousand five hundred [1,500.00] dollars, and meet the caller at a nearby street corner. A short while later a taxi came to pick up Mrs. Killian. Mrs. Killian then went to the bank and cashed a check in the amount of one thousand five hundred [1,500.00] dollars, and then proceeded to the designated corner to meet the man who had called her. On the corner, Mrs. Killian was met by a man who said he had been sent in place of Mr. Summers, who had been detained. The man opened his coat, showing Mrs. Killian a badge, and telling her he was from the F.B.I. The man suggested they have lunch together. They then proceeded to a nearby hotel coffee shop. In the coffee shop, the man asked Mrs. Killian if she had gotten the money.

Upon learning that she had, he suggested that she hand it over to him, which she did. The man also suggested that Mrs. Killian give him her checkbook, so that it could be used to help clarify her checking account. After obtaining Mrs. Killian's checkbook, the man left with the one thousand five hundred [1,500.00] dollars, and the checkbook. At trial, over appellant's objection Mrs. Killian was permitted to testify as to, among other things, the above facts.

Although Mrs. Killian had been unaware of it, her withdrawal of one thousand five hundred [1,500.00] dollars had prompted concern of the bank employees, who had tried to learn why she needed the $1,500.00 in cash, instead of accepting a cashier's check for the amount. The head teller and another employee followed Mrs. Killian from the bank. Outside the bank, the employees saw the Lafayette Police Chief passing by and stopped him, telling him of what had transpired. The police chief and the head teller, who was a former police officer, followed Mrs. Killian and the man she met on the street corner to the coffee shop. When the man left the coffee shop the police chief followed him, while the bank employee went into the coffee shop and asked Mrs. Killian if she had given the one thousand five hundred dollars [1,500.00] to the man. She said she had and stated the reasons why. Meanwhile, the police chief was following the man through the streets. Finally, the police chief stopped the man, asked him for identification. The man's identification showed his name was Dillon and that his address was Chicago, Illinois. The man said he was a rug salesman and was trying to sell Mrs. Killian some carpet. The man willingly agreed to walk back to the coffee shop with the police chief. Upon returning to the coffee shop, the bank employee told the police chief, in the presence of the appellant, that Mrs. Killian had given the one thousand five hundred [1,500.00] dollars and her checkbook to the man and that he represented that he was an F.B.I. agent attempting to investigate a fraud in her checking account. The police chief then asked the man if he had Mrs.

Killian's checkbook, whereupon, the man pulled it from his pocket. He then asked the man if he had the money. The man reached into his pocket and pulled out the money and placed it inside the checkbook. The police chief told the man to put the checkbook and the money back in his pocket until they asked for them. The police chief asked the man and Mrs. Killian to go the police station with him. At the police station, the man who was the appellant, Dillon, was informed that he was being charged, and asked him to empty his pockets. In appellant's possession was the one thousand five hundred [1,500.00] dollars and Mrs. Killian's checkbook. After hearing Mrs. Killian's story regarding the appellant's showing her an F.B.I. badge, the police chief searched the car used to take the appellant to police headquarters. This search was made on September 18, 1968, the day following the alleged crime. The police chief found a gold F.B.I. badge on the floor of the car behind the front seat, where the appellant had been sitting. This gold badge and the checkbook and money were introduced and admitted into evidence, over appellant's objections.

Appellant urges that the trial court erred in the admission of certain evidence. Specifically, appellant's urging presents four issues for our consideration.

(1) Whether the testimony of Mrs. Killian should have been stricken as irrelevant and inadmissible because the record does not show that she designated the appellant as the man who committed the crime.

(2) Whether State's exhibit number two, Mrs. Killian's checkbook, should have been held inadmissible because there was no probable cause for an arrest.

(3) Whether certain statements made by the defendant should have been held inadmissible because of a failure to give him his *Miranda* warnings.

(4) Whether admission of State's exhibit number three, the gold F.B.I. badge, was improper because of remoteness.

First, we shall consider appellant's urging that Mrs. Killian's testimony, concerning the transaction, should have been stricken. We find no merit in appellant's urging. The record with unmistaken clarity establishes that Mrs. Killian identified the appellant as the man to whom she gave her money and checkbook. Without setting out all the numerous occasions in the course of Mrs. Killian's testimony in which she specifically referred to the appellant as the man to whom she gave her money, we shall set forth the following portion of the record, as an example. Direct examination of Mrs. Killian:

Q. ". . . the man in the police car at that time was the same man that you'd been in the Java Shop (the coffee shop) with earlier then?"
A. "Yes, yes."
Q. "Was it the same man you had given the money to?"
A. "Yes."

The police chief and bank employee testified that the man in the police car was the man who they had seen with Mrs. Killian, in the coffee shop, and identified the appellant, in court, as being that same man. Appellant is entirely correct in his assertion that the state has the burden of proof in a criminal action, to prove all elements of the offense charged and to show that the crime was committed by the accused, however, in the instant case there was ample evidence to establish that it was in fact appellant who committed the crime.

Appellant next contends that Mrs. Killian's checkbook should not have been admitted in evidence, because it was given to the police prior to his arrest and at a time when there was no probable cause for his arrest. We find no merit in appellant's urging. First, we note that the record discloses that the checkbook was recovered at the police station as part of an "inventory" of items given by the appellant to the police to be taken in custody for safe keeping. Appellant was under arrest at this time. It appears that appellant urges that there was no arrest because the record does not disclose that someone took hold of his body and said "you are under arrest."

Appellant is in obvious error in this urging. *Burns Ind. Stat. Ann.*, sec. 9-1004, defines an arrest in the following manner:

> *"Arrest defined.—Arrest is the taking of a person into custody, that he may be held to answer for a public offense. (Acts 1905, ch. 169, sec. 120 p. 584.)"*

*Burns Ind. Stat. Ann.*, sec. 9-1005, provides that an arrest is made in the following manner:

> *"Arrest—How made.—An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, but the defendant shall not be subject to any more restraint than is necessary for his arrest and detention. (Acts 1905, ch. 169, sec. 127, p. 584)."*

There is no question under the circumstances of the instant case as to whether the appellant was in fact under arrest at the time he emptied his pockets in the police station. ▮ Failure to inform a defendant that he is "under arrest" does not in every case mean that he was not in fact placed under arrest. In *Pullins* v. *State* (1970), 253 Ind. 644, 256 N. E. 2d 553, regarding the necessity of informing a defendant he is "under arrest" we made this observation:

> *"The obvious purpose of informing a suspect he is under arrest is not to make the arrest legal but to indicate to the person being arrested that his detention is legal, so* ▮ *he will not resist. In Plummer v. State (1893), 135 Ind. 308, 34 N. E. 968, the town marshall, attempting to arrest the defendant without a warrant, failed to inform the defendant of his intention, but simply attacked him. We held that under these circumstances the defendant could exercise his right to defend himself, the same as against any unprovoked attack. Here no force was employed. The reason for informing appellant he was under arrest was not present. We further notice that the fact of intent to arrest may be shown by surrounding facts and circumstances. Here a verbal statement of an intent to arrest would have been an idle ceremony." (256 N. E. 2d 556)*

Further, we note that at the time appellant was placed under arrest, that is at the time he was taken in custody at the

police station, there was probable cause for the police to believe that the appellant had obtained property of Mrs. Killian, by deception. The police had heard Mrs. Killian's own story of his impersonation of an F.B.I. agent and the money she had given him.

We shall next consider appellant's urging that certain statements made by him to the police chief, when he was stopped on the arrest and asked for identification and whether he had Mrs. Killian's money and checkbook, were erroneously admitted in evidence through the testimony of the police chief. On direct examination the police chief testified that when he stopped the appellant he said he was a rug salesman attempting to sell Mrs. Killian some rugs. The chief also testified that when he asked the appellant whether he had Mrs. Killian's checkbook the appellant said "here it is". We find no merit in appellant's urging, because the conversation does not come under the proscription of the *Miranda* rule. In *Miranda v. Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, the United States Supreme Court made these statements relative to the time when, or circumstances under which, an accused must be given a warning regarding his constitutional rights.

> *"The principles announced today deal with the protection which must be given to the privilege against self-incrimination* when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way. *It is at this point that our adversary system of criminal proceedings commences, distinguishing itself at the outset from the inquisitorial system recognized in some countries. Under the system of warnings we delineate today or under any other system which may be devised and found effective, the safeguards to be erected about the privilege must come into play at this point."*

> *"Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may*

*include inquiry of persons not under restraint.* General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. *It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." (384 U. S. at 477, 478, emphasis added)*

In the instant case we note that at the time the appellant was asked the questions he was on the sidewalk of a city street and not in custody. The police officer was merely "investigating" a possible crime as was his duty unhampered under *Miranda.* For this reason there was no necessity for the giving of the *Miranda* warnings, and the testimony of the police chief was properly admitted.

Finally, we shall consider appellant's urging that State's exhibit number three, a gold F.B.I. badge was erroneously admitted in evidence, because of its remoteness. There is no merit in appellant's urging for the following reasons. Prior to the introduction and admission of the badge in evidence, Mrs. Killian had testified that the man to whom she had given her money showed her a gold F.B.I. badge attached to the inside of his suit coat. Mrs. Killian had also testified that the man had told her he was from the F.B.I. Appellant contends that because the badge was not found until the day following the commission of the crime and because it was found in a car, which had been used by others, after the appellant was in it, the badge should not have been admitted in evidence, because of remoteness. The only place that the badge could have been disposed of by the appellant was in the car during the trip to the police station. This was relevant and material evidence and remoteness was a question for the jury to consider.

Judgment of the trial court is affirmed.

Givan, Prentice, JJ., concur, DeBruler, J., concurring in result, with opinion; Hunter, J., concurs in result, with DeBruler, J.

CONCURRING IN RESULT

DEBRULER, J.—Immediately prior to asking the appellant if he had Mrs. Killian's checkbook and money, Chief Miller had knowledge of the following facts: appellant claimed to be a rug salesman attempting to sell Mrs. Killian a rug; Mrs. Killian claimed that she met appellant on a street corner pursuant to instructions given to her on the phone by someone requesting her help in catching a check forger who had been tampering with her account; that appellant represented to Mrs. Killian that he was an FBI agent and showed her a gold badge; that appellant took Mrs. Killian's checkbook and $1,500.00 cash representing to her that was part of the plan to clear up the problem with her account; Chief Miller had followed appellant since he left the coffee shop after receiving the checkbook and money and appellant had not disposed of either item. I believe this clearly gave Chief Miller the necessary probable cause to arrest appellant, and in fact appellant was a few minutes later taken into custody and transported to the police station. A limited search incident to this valid arrest was permissible if made *contemporaneously* with the arrest and if the probable cause to arrest was not based on the items seized in the search. *Smith* v. *State* (1971), 256 Ind. 603, 271 N. E. 2d 133; *Davis* v. *Mississippi* (1969), 394 U. S. 721, 89 S. Ct. 1394; *Preston* v. *U. S.* (1964), 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed 2d 777. This search was contemporaneous with the arrest and the items obtained were admissible in evidence.

After the police chief had the above information he asked appellant if he had Mrs. Killian's checkbook and appellant said "here it is" at the same time giving the checkbook to Chief Miller. At the time Miller asked the question he had probable cause to arrest appellant for theft, and it is clear that appellant was not free to leave. Therefore, I believe appellant had been deprived of his freedom of action in a significant way and should have not been questioned until he had been advised of his constitutional rights under *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. The statements

were clearly incriminating because they showed appellant had knowing possession of Mrs. Killian's money and checkbook. It was trial court error to admit evidence of appellant's response to Chief Miller's question about whether appellant had Mrs. Killian's checkbook and cash.

However, this error was harmless. The standard where a federal constitutional error is involved is that it is deemed harmless only if the appellate court can say "beyond a reasonable doubt the error complained of did not contribute to the verdict obtained." *Chapman* v. *Calif.* (1967), 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705; *Dillard* v. *State* (Ind., October 26, 1971). That standard is met here. Appellant's statement "here it is" was evidence that appellant knew he was in possession of Mrs. Killian's money. There was overwhelming independent evidence of this. At all stages of the proceedings appellant consistently conceded he possessed her money as part of a rug sale transaction. The evidence of appellant's statement could not have contributed to this verdict.

Hunter, J., concurs.

NOTE.—Reported in 275 N. E. 2d 312.