Phillip L. WOODS, Defendant-Appellant,

v.

BROWN COUNTY PLAN COMMISSION, Plaintiff-Appellee.

No. 1-682A150.

Court of Appeals of Indiana,
First District.

March 22, 1983.

Rehearing Denied April 26, 1983.

Thomas N. Mote, Lawson, Pushor, Mote & Coriden, Columbus, for defendant-appellant.

Thomas M. Barr, Nashville, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Phillip L. Woods (Woods) appeals the granting of an injunction issued by the Brown Circuit Court prohibiting Woods from operating a travel trailer park. The action was initiated by the Brown County Plan Commission.

We affirm.

## STATEMENT OF THE FACTS

The trial court made special findings of facts and conclusions of law. It is shown that Woods operates a flea market not in violation of Brown County's zoning ordinance. However, he permitted persons in travel trailers, who were vendors or customers, numbering two to thirteen, to park the travel trailers on the premises and occupy them. The Brown County Plan Commission filed its action to enjoin the permissive use of the flea market premises as a travel trailer park, claiming that it was a non-conforming use under the zoning ordinance.

The ordinance provided that the area was zoned "General Business" (GB), and a special exception was required to operate a travel trailer park, which Woods did not have. Findings of Fact 8, 9 and 10, read as follows:

"8. The definition section of the Brown County Zoning Ordinance defines a 'travel trailer park' as an area of land on which two or more travel trailers are regularly accomodated [sic] with or without charge, including any building or other structure, fixture, or equipment that is used or intended to be used in connection with providing that accomodation [sic]. The plaintiff contends the defendant is operating a travel trailer park as defined by the ordinance without a special exception to do so, and that such act should be permanently enjoined by this Court.

9. Section 3.2 of the Brown County Zoning Ordinance lists certain 'accessory uses' which are authorized in all zoning districts of the County; however, such uses are listed as examples, and the Court must conclude that the list is not inclusive of all acceptable accessory uses. The sample list does not include the parking of travel trailers as an accessory use, nor does it include the operation of a travel trailer park.

10. The definition section of the ordinance does define an 'accessory use' as a substitute use that relates to the same lot as a primary use and is a use other than human occupancy. Thus, an accessory use does not include any accessory or incidental use of real estate relating to the primary use if such incidental or accessory use provides accomodation [sic] or occupancy by other persons."

Conclusions of Law 4, 5, and 6 are as follows:

"4. That the primary use of the real estate owned by the defendant is the operation of a flea market business. That the defendant has allowed vendors or customers to park vehicles on the real estate which fall within the description of travel trailers under the ordinance as an incidental or accessory use of the real estate.

5. That the ordinance precludes any accessory use if the use involves an act of human occupancy in any vechicle [sic], including travel trailers, as defined by the ordinance.

6. That the defendant's act of allowing travel trailers to park on his real estate when said travel trailers are occupied by other persons, does constitute a violation of the provisions of the Brown County Zoning Ordinance, and the defendant should be enjoined from commit [sic] such violations of the Brown County Zoning Ordinance."

## ISSUES

Woods presents the following issues for review:

I. Whether it was reversible error to find a property owner in violation of a zoning ordinance for operating a travel trailer park as an accessory or incidental use when:

(a) the ordinance only requires an owner to get a special exception before operating a trailer park as a primary use, and the court found the owner's primary use of his property was as a flea market; and

(b) an accessory use is defined in the ordinance as one that does not involve human occupancy (e.g., bird baths, sidewalks, garages, and mailboxes).

II. Error in admitting zoning ordinance into evidence.

## DISCUSSION AND DECISION

*Issue I. Accessory use*

Section 1.2 of the ordinance defines a travel trailer and travel trailer park as follows:

" 'travel trailer' means a vehicle or other portable structure 30 feet or less in length that is designed to move on the highway and designed or used as a dwelling;

'travel trailer park' means an area of land on which 2 or more travel trailers are regularly accommodated with or without charge, including any building or other structure, fixture, or equipment that is used or intended to be used in connection with providing that accommodation;"

That section also defines accessory use as,

" 'accessory use' means a subordinate use that relates to the same lot as a primary use and is a use other than human occupancy;"

Section 3.2 throws further light on accessory uses. It provides that accessory uses, such as the following, are authorized in all districts: Bird baths, bird houses, buildings such as garages, studios, and tool sheds, curbs, driveways, fences, hedges, lamp posts, mailboxes, name plaques, parking spaces, public utility installations, retaining walls, trees, shrubs, flowers and walks.

Section 3.1 discusses primary uses as follows:

"Primary uses are authorized in the districts established by or under section 2.1, as shown in the following table. Where the district designation is marked with an asterisk, the use is permitted in that district only if a special exception has been granted under section 3.3. Where it is marked by a double asterisk, the use is permitted in that district only if it has been approved by the Commission as necessary to the convenience of employees and the effective operation of an industrial use."

The appropriate schedules of the ordinance indicate that a travel trailer park is listed under primary uses, which requires a special exception in an area zoned "GB."

In summary of his argument Woods states his theory on appeal as follows:

"First, Woods argues that the Court's Order is in error as a matter of law since it incorrectly construed the zoning ordinance and misapplied it to Woods.

The ordinance requires an owner to obtain a special exception for certain primary uses in designated area. The Court found that Woods had only one primary use for his property, a flea market. For this use no special exception was required. The ordinance defines an accessory use as one not involving human oc-

cupancy. A trailer park is a use involving human occupancy. It cannot be an accessory use, by definition. Since Woods' use of his property for a trailer park was found to be incidental or accessory to his primary use as a flea market, there can be no violation of the ordinance for failure to obtain a permit for a primary use. There can also be no violation for an unauthorized accessory use, since the use was by the ordinance's definition not accessory. The Court applied the common-sense term, 'incidental', to Woods' use of his property and nothing in the ordinance requires Woods to get an exception for such a use. Therefore, the Court was in error in finding Woods in violation of the ordinance."

We take this argument to mean that the operation of a travel trailer park is exempt from the operation of the ordinance if it is only incidental to the primary business, and a special exception is required only where the travel trailer park is a primary use.

■ Rules relating to statutory construction are to be applied in construing ordinances. *Metropolitan Board of Zoning Appeals, etc. v. Shell Oil Company,* (1979) Ind.App., 395 N.E.2d 1283. It is fundamental in statutory construction that the statute should be construed so as to ascertain and give effect to the intention of the legislature expressed in the statute. *Barr v. Sun Exploration Co., Inc.,* (1982) Ind.App., 436 N.E.2d 821. The objects and purposes of the statute must be considered, *Common Council of City of Peru v. Peru Daily Tribune, Inc.,* (1982) Ind.App., 440 N.E.2d 726, as well as the effect and consequences. *Lake County Beverage Company, Inc. v. 21st Amendment, Inc.,* (1982) Ind.App., 441 N.E.2d 1008. We must give effect to the plain meaning of the language used, and the court must not substitute language which it feels the legislative body may have intended. *Ott v. Johnson,* (1974) 262 Ind. 548, 319 N.E.2d 622.

In *Barr v. State,* (1980) Ind.App., 400 N.E.2d 1149, this court said:

"It is also the responsibility of an appellate court to make its determination from a reading of the statute in its entirety, rather than giving a strict and literal meaning to any particular section." (Citations omitted.)

400 N.E.2d at 1150.

■ The ordinance directly prohibits a travel trailer park use under the schedules in an area zoned General Business without the acquisition of a special exception. The accessory use definition clearly means any permissible accessory use, and by the definition stated in the ordinance it specifically excludes as a permissible accessory use, uses which involve human occupancy. Therefore, we conclude that a travel trailer park is prohibited in an area zoned General Business without the issuance of a special exception regardless of whether it is a primary or accessory use. Nothing in the ordinance permits a travel trailer park use merely because the owner associates it with another conforming business. Following Woods' logic a pig sty and butchering pen operated to furnish meat to an adjacent gourmet restaurant would be an exempt accessory use so long as the ham was served to the restaurant customers. Such reasoning is counter to the manifest purposes of zoning. We find no error in the court's decision.

*Issue II. Admission of ordinance*

Woods argues that sufficient foundation was not laid for the admission of the zoning ordinance, which was admitted through the testimony of Barbara Rich, the director of the Brown County Plan Commission. She was the officer in charge of all the Commission's records which included the ordinance. She identified it as the master zoning ordinance that was enacted in 1965, recorded and was a part of the records of her office. She testified that the copy offered was an unsigned copy which was reproduced to distribute to the public and was a true copy of the original document. Woods objected to its admission as follows:

"Number one, it is not executed by any party; number two, there has been insufficient foundation laid for the admission of the document into the evidence, uh, under provision of 34–1–17–7, which provides the mechanism by which an ordinance can be admitted into evidence. It cannot, uh, a county ordinance cannot be

taken judicial knowledge of, if that is the correct term."

We perceive that Woods' argument is as follows: (1) the lack of signatures on the copy; (2) it is not exemplified according to Ind.Code 34–1–17–7; and (3) the court cannot take judicial notice of local ordinances.

■ We first agree that the statute relied upon by the Plan Commission in its brief, Ind.Code 36–7–4–1020, providing for judicial notice of zoning ordinances is unconstitutional by virtue of the authority in *In re Public Law No. 305 and Public Law No. 309 Of the Indiana Acts of 1975,* (1975) 263 Ind. 506, 334 N.E.2d 659.

■ Ind.Code 34–1–17–7 does provide that exemplification or copies of public records shall be admitted into evidence in any court by the attestation of the keeper of the records that the same are true and complete copies of the records of his office. We know of no rule or case and Woods has cited none which prohibits the officer in charge of records from appearing in court and testifying under oath as to the authenticity of the record as was done here. Even Ind. Code 34–1–17–7, relied upon by Woods, does not require the original, or even a signed copy, but merely a copy. The statute simply enables public records to be admitted without the necessity of bringing the officer to court to testify.

Chapter 174 of the Acts of 1947, under which this zoning ordinance was enacted, as well as the present Act, Ind.Code 36–7–4–501 *et seq.,* gives the Plan Commission the power and the duty to keep accurate records, prepare and publish ordinances, and to enforce the provisions of the master plan and any ordinances passed thereunder. Any master plan and zoning ordinance originates with and is passed first by the Plan Commission. It is then certified to the Board of Commissioners who may amend or reject it. If the commissioners do not act within 60 days it becomes law. If they reject it or amend it, their reasons for doing so must be stated to the Plan Commission in writing. In turn, if the Plan Commission rejects the amendment, or the Board's rejection, the original ordinance becomes law unless the commissioners override that ac-

tion by unanimous vote. Therefore the ordinance is an action of the Plan Commission as required by law as well as the concurring action of the commissioners, and the record of the ordinance is a record of the Plan Commission. The attestation of its authenticity by the executive officer of the Plan Commission charged with the duty of keeping the records qualifies it to be admitted into evidence.

■ In his brief, Woods additionally argues that (1) the Plan Commission must prove the ordinance was adopted and took effect, (2) that it was signed by the presiding officer of the Board of Commissioners, (3) that the ordinance was never signed or recorded, and (4) plaintiff's witness was not qualified to testify as to the legal effect or content of the ordinance. These matters were not raised in the objection, and are waived, and may not be argued on appeal. *State v. Maplewood Heights Corporation,* (1973) 261 Ind. 305, 302 N.E.2d 782; *Jones v. State,* (1973) 260 Ind. 463, 296 N.E.2d 407.

For the above reasons this cause is affirmed.

Affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.