**Michael W. BAKER, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 2–485A107.

Court of Appeals of Indiana,
Fourth District.

Oct. 8, 1985.

Rehearing Denied Dec. 13, 1985.

Richard E. Sisson, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendant-Appellant Michael W. Baker (Baker) appeals his convictions for public intoxication, a class B misdemeanor, IND. CODE 7.1–5–1–3 and driving while intoxicated, a class A misdemeanor, I.C. 9–4–1–54.

We affirm.

ISSUES

Baker presents three issues for our review:

1. Whether Barry R. Hicks's testimony should be suppressed because he had not completed the training required by I.C. 5–2–1–9(b) at the time he arrested Baker,

2. Whether public intoxication is a lesser included offense of driving while intoxicated, and

3. Whether the evidence was sufficient to support Baker's conviction.

FACTS

As Officers Barry R. Hicks (Hicks), Rick Martin (Martin), and Richard L. Calloway (Calloway) of the North Manchester police department were executing a search warrant at a residence in North Manchester, they saw a van approaching the residence. They thought it might belong to the suspect involved in their investigation. When Hicks stepped into the street and motioned for the van to stop, the van accelerated. It headed directly for Hicks who had to jump out of the way to avoid being hit. Hicks and Martin pursued the van. It was speeding and ran several stop signs before being stopped.

Once the van was stopped, Hicks approached the driver's door. Baker was driving. His face was flushed and red, his eyes were half open, he had a dull look, and there was a strong odor of alcohol about him. Baker refused to produce his driver's license and registration. When he attempted to get out of the van, he fell to the ground. Baker fell again while attempting to get up and required assistance to stand. Hicks then arrested Baker. At the police station, Baker exhibited drunken behavior.

At that time, Hicks had not yet completed his training at the Indiana Law Enforcement Academy pursuant to I.C. 5–2–1–9(b). Other pertinent facts appear below.

DISCUSSION AND DECISION

### I. *Training Requirements*

Baker first contends I.C. 5–2–1–9(b) requires a law enforcement officer to successfully complete the training required by that section before he is authorized to enforce the laws of our state. Therefore, Baker posits, his arrest by Hicks was illegal, and all evidence resulting therefrom should have been suppressed. We disagree.

■ When interpreting a statute, a court should strive to achieve the intent of the legislature. *Petition of Meyer* (1984), Ind. App., 471 N.E.2d 718, 720; *Marion County Department of Public Welfare v. Methodist Hospital of Indiana, Inc.* (1982), Ind. App., 436 N.E.2d 123, 126. I.C. 5–2–1–9(b) states

(b) No law enforcement officer appointed on or after July 6, 1972, shall be empowered or authorized to enforce the laws or ordinances of the state or any political subdivision thereof unless he has, within one (1) year from his date of appointment, successfully completed the minimum basic training requirements established pursuant to this chapter by the board. Should any such person fail to successfully complete said basic training requirements within one (1) year from his date of employment, he shall not perform any of the duties of a law enforcement officer involving control or direction of members of the public or exercising the power of arrest until he has successfully completed such basic training requirements. The provisions of this subsection shall not apply to any law enforcement officer appointed prior to July 6, 1972.

■ Standing alone, the first sentence of this section seems to say police officers have no law enforcement powers until they have successfully completed the training course prescribed by statute. However, in interpreting this section, it is incumbent upon us to look at the statute as a whole rather than viewing this sentence in isolation. *Edward Rose of Indiana v. Fountain* (1982), Ind.App., 431 N.E.2d 543, 545; *Barr v. State* (1980), Ind.App., 400 N.E.2d 1149, 1150. Further, we must read statutes on the same subject together so as to harmonize and give effect to each. *Edward Rose of Indiana* at 545; *Connell v. Logansport* (1979), Ind.App., 397 N.E.2d 1058, 1061.

■ A careful reading of all sections of I.C. 5–2–1 clearly shows the legislature, in an effort to ensure public safety and the general welfare of the people of this state, established a program for mandatory training of law enforcement officers.[1] What is not clear from such language, however, is whether the legislature intended a newly-hired officer would have arrest powers before he had completed his mandatory training. Reading I.C. 5–2–1–9(b) as a whole, we believe the legislature so intended.

If probationary law enforcement officers were not to have arrest powers until such time as they have completed their mandatory training, the legislature would have so provided. In that event, the one year from date of employment language would have been unnecessary to the section's meaning.

■ All statutory language is deemed to have been used intentionally. Words or clauses in statutes are to be treated as surplusage only in the absence of any other possible course. *Brook v. State* (1983), Ind.App., 448 N.E.2d 1249, 1251.

■ Also, where a statute is subject to judicial interpretation, we will endeavor to give it a practical application, to construe it so as to prevent absurdity, hardship, or injustice, and to favor public convenience. *Lake County Beverage Co., Inc. v. 21st Amendment, Inc.* (1982), Ind.App., 441 N.E.2d 1008, 1014; *State ex rel. Stream Pollution Control Board v. Town of Wolcott* (1982), Ind.App., 433 N.E.2d 62, 65; 26

---

**1.** I.C. 5–2–1–1

I.L.E. *Statutes* § 116. Under the interpretation urged by Baker, the state and every county, city, town, or other political subdivision would have to pay the cost of training new officers before they could begin to perform their duties. If the newly-hired officer later proved to be incompatible with his fellow workers, job hours, or any other aspect of police work, the municipality would have borne the cost of his training without receiving any practical benefit. Furthermore, especially in smaller police departments, the eight weeks necessary to complete such training could leave the public totally unprotected if several officers needed to be trained at the same time.

■ Further, I.C. 5-2-1 delegates the rule making power necessary to carry out the legislature's intent to the Law Enforcement Training Board (LETB) created therein.[2] Paragraph (b) of section 9 of this statute is merely the enforcement mechanism created by the legislature to ensure strict compliance with the LETB's rules and regulations. *Guiden v. Town of Highland* (1981), Ind.App., 425 N.E.2d 731, 734.

The pertinent rule established by the LETB concerning this question says

Any law enforcement officer described in paragraph II A [250 IAC 1-2-1] above who fails to successfully complete said required basic training course within one year after his first or original appointment by a single appointing authority (on or after July 6, 1972) shall not be empowered or authorized to enforce the laws or ordinances of the State of Indiana or any political subdivision thereof *after the first anniversary of his date of appointment.* (Emphasis supplied).

250 Ind. Administrative Code 1-2-3. This rule allows a new officer to enforce the laws of Indiana without having completed the required training for a period of one year. Originally filed on July 6, 1972, this administrative rule has remained unchanged to the present. In 1982 the legislature amended I.C. 5-2-1-9(b) to comport with the specific dates established by the

LETB in 250 IAC 1-2-3. It left the language in question here unchanged.

■ The doctrine of legislative acquiescence applies here. A long adhered-to administrative interpretation dating from the legislative enactment, with no subsequent change having been made in the statutory language involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts. *Indiana Department of Revenue, Indiana Gross Income Tax Division v. Glendale-Glenbrook Associates,* (1981), Ind., 429 N.E.2d 217, 219; *Indiana Alcoholic Beverage Commission v. Osco Drug, Inc.* (1982), Ind.App., 431 N.E.2d 823, 834; *see also Baker v. Compton* (1965), 247 Ind. 39, 211 N.E.2d 164; *Board of Trustees of Public Employees' Retirement Fund v. Baughman* (1983), Ind.App., 450 N.E.2d 95; *State, Crooke v. Lugar* (1976), 171 Ind. App. 60, 354 N.E.2d 755. We find no reason to alter the LETB's interpretation.

■ Since Hicks's arrest of Baker was proper, the evidence was properly admitted.

## II. *Lesser Included Offense*

■ Baker next asserts the offense of public intoxication is a lesser included offense of driving while intoxicated, thus it was improper to convict him of both. Baker cites no cases which support his position, however, Failure to cite supporting authority for an error alleged on appeal generally amounts to waiver of that error. *See, Gajdos v. State* (1984), Ind., 462 N.E.2d 1017, 1021; *Ernst v. Indiana Bell Telephone Co.* (1985), Ind.App., 475 N.E.2d 351, 354; *Ruth v. State* (1984), Ind.App., 462 N.E.2d 269, 272; Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). Although this alleged error might infringe upon Baker's constitutional right against double jeopardy, such infringement does not constitute fundamental error and may be waived. *Jeffers v. U.S.* (1977), 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168; *Pivak v. State* (1931), 202

---

2. I.C. 5-2-1-3, 5-2-1-9

Ind. 417, 175 N.E. 278; *Strode v. State* (1980), Ind., 400 N.E.2d 183, 186.

### III. *Sufficiency*

Baker's final issue challenges the sufficiency of the evidence presented at trial. When we review a conviction for sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Rather, we consider only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value to support the conviction, the finding of the jury will not be disturbed. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, 1229; *Knisley v. State* (1985), Ind.App., 474 N.E.2d 513, 517.

■ Baker first attempts to discredit the testimony at trial by using a mathematical formula to show the various distances traveled, the speeds involved, and the time periods testified to at trial are inconsistent. None of these formulas or theories were presented at trial and thus are inappropriate on appeal. Further, any such evidence would merely impeach the testimony of the officers, thus requiring us to judge the credibility of the witnesses which we may not do. Even were we to consider the time sequences as proposed by Baker, such would not merit reversal. A careful examination of testimony at trial shows the witnesses were not speaking in exactitudes as to time. No one was timing each event with a stop watch but, rather, the testimony was in generalities as to the impressions of the officers of the time periods involved. This alleged conflict therefore does not amount to insufficiency of the evidence warranting reversal but, at the most, is a minor conflict in the evidence with which the fact finder properly dealt at trial. We will not disturb findings on appeal. *See, generally, Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 84.

Under the guise of sufficiency, Baker next tries to claim Hicks's attempt to stop Baker's van was improper. This alleged error was not contained in Baker's motion to correct errors, it appears for the first time on appeal. His failure to properly raise this issue in the motion to correct errors results in waiver of this claimed error. *Lowery, supra,* 478 N.E.2d at 1229; *Badelle v. State* (1983), Ind., 449 N.E.2d 1055, 1060.

Baker finally contends (a) the officers' testimony is conflicting, and (b) there was some evidence at trial Baker's actions at the police station may have been caused by the injuries he suffered during his two falls while being arrested. Thus, he claims there is no proof he was intoxicated. This is but a transparent invitation for us to reweigh the evidence. We will not do so.

■ The evidence most favorable to the State shows Baker speeded up when signaled by Hicks to stop and nearly ran over him. Upon pursuit by Hicks and Martin in a marked police car with red lights activated, Baker continued to drive, ignored several stop signs, and exceeded the speed limit. When finally stopped, Hicks observed Baker had a flushed and red face, his eyes were half closed, he had a dull look, and there was a strong odor of alcohol from the van. Further, Hicks twice requested Baker to produce his driver's license and registration to which Baker failed to respond. As Baker attempted to get out of the van at Hick's second request, he fell onto the gravel parking lot. Coupled with the other evidence regarding his alcoholic intake that evening, this is sufficient evidence from which the trier of fact could reasonably infer Baker was intoxicated. *See, e.g., Brunes v. State* (1985), Ind.App., 475 N.E.2d 356, 358; *Garland v. State* (1983), Ind.App., 452 N.E.2d 1021, 1022. Baker's subsequent fall and actions are merely further indicia of his intoxicated state, not necessary to his conviction. The possibility these actions might have been caused by injuries received in his first fall were considered and properly rejected by the trial court. The evidence at trial was sufficient to support Baker's convictions.

Affirmed.

MILLER, J., concurs in result.

YOUNG, P.J., dissents without opinion.