**Orville PAYNE d/b/a 5C Auto Parts and N.E. Sue Payne, Appellants (Defendants Below),**

v.

**TOWN OF AUSTIN, Indiana, Appellee (Plaintiff Below).**

No. 72A01–8710–CV–241.

Court of Appeals of Indiana, First District.

May 17, 1988.

Rehearing Denied July 5, 1988.

Joseph Leon Payne, Austin, for appellants.

Ralph E. Randall, Hays and Randall, Scottsburg, for appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Orville Payne d/b/a 5C Auto Parts and N.E. Sue Payne appeal a Scott Circuit Court judgment in favor of the Town of Austin. We affirm.

## FACTS

On February 3, 1958, the Scott County Board of Commissioners passed a resolution authorizing the state highway department to close portions of certain roads in order to construct Interstate 65. Included in the resolution was a certain portion of "200W," a north-south county road established in 1909.[1]

In 1964 and 1974, respectively, the Paynes purchased property to the west and east of 200W, south of its intersection with "300N." In 1964, they removed a log barricade which had blocked 300N just west of its intersection with 200W. Some time later, they removed logs which had barricaded 200W just south of its intersection with 300N. From 1958 to 1975, 200W was in a state of considerable disrepair.

In 1975, the town constructed a sewage treatment facility located along 200W south of the Paynes' property and east of I–65. Town employees used 200W to travel to and from the facility. The Paynes continuously interfered with the town's use of the road, thereby obstructing the employees' access to the sewer plant.

In 1978, the town filed an action seeking to enjoin the Paynes from interfering with its use of 200W. The Paynes filed a counterclaim, alleging that 200W had been vacated and the title to it had reverted to them as abutting landowners. They therefore sought to quiet title to the property underlying 200W. The trial court heard evidence and found that the portion of 200W adjacent to the Paynes' property and the town's sewer plant is an open county road. The court therefore entered judgment in favor of the town and enjoined the Paynes from blocking the town's access to the plant. This appeal immediately followed:

## ISSUE

The Paynes present only one issue for our review:

1. The following diagram, implemented at the pre-appeal conference, illustrates the relative locations of the roads involved in this dispute.

Is the trial court's decision contrary to law?

## DISCUSSION AND DECISION

A decision is contrary to law only when the evidence most favorable to the judgment and all reasonable inferences to be drawn from it lead to a conclusion opposite the one reached by the trial court. *City of Peru v. Utility Service Bd.* (1987), Ind. App., 507 N.E.2d 988, 990. We will affirm the trial court's judgment, even if entered for the wrong reason, if it is sustainable on any theory consistent with the evidence. *City of Indianapolis v. Fields* (1987), Ind. App., 506 N.E.2d 1128, 1130.

The Paynes contend the trial court committed clear error in concluding that the portion of 200W adjacent to their property is an open county road. Specifically, they argue that the county, by its 1958 resolution, vacated the portion of the road south of its intersection with 300N, *see* IND. CODE 8–11–1–9, and that the ownership of the property, therefore, reverted to them as abutting landowners. *See Gorby v. McEndarfer* (1963), 135 Ind.App. 74, 191 N.E.2d 786. The town argues, however, that the resolution succeeded in closing 200W only at the eastern boundary fence of I–65. The 1958 resolution provides, in part, as follows:

## ROAD CLOSING LIMITED ACCESS HIGHWAY

Road Closure Concurrence for Interstate Limited Access Highway Improvement from the Clark–Scott County Line, near Underwood, and extending in a northerly direction approximately paralleling U.S. 31 to the Scott–Jackson County Line, north west of Austin, and south of Crothersville, Federal Project I–03–1.

WHEREAS, the Indiana State Highway Department is preparing plans for the improvement of a segment of the Interstate Limited access highway from the Kentucky–Indiana State Line, at Jeffersonville, to Indianapolis, and

WHEREAS, said construction requires the complete control of access in accordance with the provisions of Section 108 of the Federal Aid Highway Act of 1956, and

WHEREAS, the completion of the above described segment of the route requires that certain roads be closed and that access to and exit from the proposed improvement be limited to certain intersections and points,

NOW THEREFORE, BE IT RESOLVED that said plan as hereby presented on this 3 day of Feb. 1958 is hereby approved and the Board of County Commissioners of the County of Scott authorizes the Indiana State Highway Department to close off the following roads, *as shown on the attached exhibit,* and approves the construction in accordance with the pertinent features as hereinafter enumerated:

1. Close the east-west road—"550–S".

2. Close the east-west road—"450–S".

3. Close the east-west road, which is approximately one-half mile north of "450–S", just east of the north-south road—"50–W". (This east-west road is not now is [sic] use across the creek).

4. Close the east-west road—"200–S".

5. Close the east-west road—"25–N".

6. Close the north-south road—"200–W", and the east west road "300–N", at the westerly side of the new limited access highway; connect these two roads and extend north as a frontage road.

7. *Close the north-south road— "200-W" and the East–West road— "300–N" at the easterly side of the new limited access highway, but permit the intersection of these two roads to remain in use.*

(R. 71) (Emphasis added.)

The trial court specifically found that the resolution operated to close off only the portion of 200W within the I–65 eastern boundary fence and not the portion adjacent to the sewage plant and the Paynes' property. The court concluded that the commissioners had not taken the proper statutory steps necessary to close the road beyond the eastern boundary fence. IND. CODE 8–11–1–7 provides in part as follows:

... The state or any of its subdivisions or municipalities shall have authority to provide for the elimination of intersections at grade of limited access facilities with existing state and county roads, and city and town streets, by grade separation or service road, or by closing off such roads and streets at the right-of-way boundary line of such limited access facility[.] ...

■ The commissioners, acting in concurrence with the state, were authorized only to close off county road 200W at the I–65 right-of-way boundary line. They were not empowered, by their resolution, to extend the closure of 200W to include the area of the road adjacent to the parties' property. Therefore, any purported attempt to do so would have been ineffectual.

■ Even assuming the commissioners were authorized to close the road adjacent to the parties' property, we must determine whether they intended by their resolution to do so. The parties agree that rules of statutory construction are to be applied in construing the 1958 resolution. *See Woods v. Brown County Plan Comm'n* (1983), Ind.App., 446 N.E.2d 973 (rules relating to statutory construction are to be applied in construing local ordinances). Thus, the resolution should be construed so as to ascertain and give effect to the intent of its drafters. *Id.* at 976. All language is deemed to have been used intentionally and words or clauses are to be treated as surplusage only in the absence of other possible course. *Brook v. State* (1983), Ind. App., 448 N.E.2d 1249, 1251. Where the meaning of the resolution is plain and unambiguous, there is no room for judicial construction. *Community Hospital v. McKnight* (1986), Ind., 493 N.E.2d 775, 777. However, when the resolution is subject to judicial construction, "we will endeavor to give it a practical application, to construe it so as to prevent absurdity, hardship, or injustice, and to favor public convenience." *Baker v. State* (1985), Ind.App., 483 N.E.2d 772, 774.

■ In this case, the resolution makes it clear that a portion of 200W was to be closed in order to construct I–65. It is the extent of that closure which has given rise to this dispute. Section seven of the resolution provides that the state may "[c]lose the north-south road—'200–W'—and the East–West road '300–N', at the easterly side of the new limited access highway [I–65], but permit the intersection of these two roads to remain in use." The Paynes assert that the commissioners clearly intended that 200W be closed all the way from I–65 north to its intersection with 300N, thus including in the closure the portion of 200W adjacent to their property and the town's sewage treatment plant. On the other hand, the town asserts that the commissioners clearly intended that 200W be closed only as far east as the boundary fence to I–65, thus leaving 200W open to those traveling as far south as the plant. The trial court adopted the town's interpretation.

The language of section seven, examined in context with the other sections closing various roads, indicates an intent on the part of the commission to limit specifically the extent of the closure of 200W and 300N. For example, the sections dealing with the closure of other roads merely state that the roads are to be closed. Thus, the additional language found in section seven must be deemed an intentional effort to limit the closure of 200W.

It is clear from section seven that the intersection of 200W and 300N has remained open. What is unclear, however, is the extent to which the portion of 200W south of that intersection remains open. Section seven purports to close 200W on the "easterly side" of I–65. We conclude that the language of section seven is ambiguous and, therefore, is subject to more than one interpretation.

The commissioners by their use of the language, "as shown on the attached exhibit," obviously intended that some sort of map or diagram accompany the resolution. However, the exhibit could not be located in county records. Absent the necessary exhibit, the exact intent of the commissioners cannot be ascertained.

Resort to other evidence reveals that, prior to the construction of the sewage treatment plant, the disputed portion of 200W was barricaded and was in a considerable state of disrepair. However, a lack of maintenance does not constitute an abandonment. *Smolek v. Bd. of County Comm'rs* (1979), 179 Ind.App. 603, 386 N.E.2d 997. The record also indicates that during the 1970's town employees began to use the road regularly and that the county assisted in financing improvements made to the road in an effort to make it passable for plant employees.

To adopt the Paynes' interpretation of the resolution would force the town either to secure easements or to secure a new roadway to gain access to its sewage plant. The town also might be forced to relocate utility, gas, electric and sewer lines currently running down 200W. Thus, the town would suffer extreme hardship and the public, including the Paynes, would be inconvenienced by the possible interruption of sewer services. Thus, in the face of ambiguity, practicality and public convenience favor the town's interpretation that the portion of 200W adjacent to its plant and the Paynes' property remains an open county road. The Paynes therefore were not empowered to interfere with the town employees' use of the road, and the trial court properly enjoined them from doing so. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

NEAL and HOFFMAN, JJ., concur.