**Regina G. MILLER, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 53A04–9402–CR–52.

Court of Appeals of Indiana,
Fourth District.

Oct. 13, 1994.

Transfer Denied March 3, 1995.

Samuel S. Shapiro, Bloomington, for appellant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee.

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Regina Miller appeals from her conviction of operating a vehicle while intoxicated, a class A misdemeanor,[1] and operating a vehicle with at least .10% by weight of alcohol in her blood, a class C misdemeanor.[2]

We reverse.

### ISSUE

Whether the trial court erred in admitting over objection the evidence obtained after Miller was detained by Special Deputy Sheriff Dennis Goen?

### FACTS

On the afternoon of December 31, 1992, Dennis Goen, a Bloomington, Indiana firefighter and Special Deputy Sheriff, was trav-

---

1. Ind.Code 9–30–5–2.

2. Ind.Code 9–30–5–1.

eling westbound on Highway 45 when he noticed a car being driven erratically. The car, which was being driven by Miller, did not maintain a constant rate of speed, repeatedly weaved from side to side, and crossed the center line and right side of the road several times. Goen followed the car for fifteen minutes, during which time he periodically honked his horn and flashed his lights in an attempt to get the driver's attention. When the two vehicles stopped at a stoplight, Goen got out of his truck and approached Miller's car.

He knocked on the driver's side window and Miller rolled the window down. Goen asked Miller if she was alright and Miller replied that she was. He also asked her if she was on medication and she responded that she was not. Goen stated that he did not want Miller to drive any further, and told her that he was a special deputy. He also requested Miller to park her car along the roadway. Goen was not wearing a uniform, he did not present a badge, and his personal truck was not marked as a police vehicle.

When the traffic light turned green, Miller asked Goen if he would allow her to drive to a nearby church parking lot. Goen agreed, even though he expressed that he preferred for her to park her car along the road, as long as she went no further than the church parking lot. He then requested an elderly couple to call 911 to summon a police officer to the scene, and followed Miller into the parking lot. He asked her if she had been drinking and she replied affirmatively. He told her that he was detaining her, and reached into her car and removed the keys from the ignition. He asked Miller whether she had someone she could call to come and get her and she responded that she did not. Goen also admitted that he interfered with Miller's freedom of movement.

When Police Officer David Drake finally arrived at the scene, Goen gave him the keys to Miller's car and left. Officer Drake noticed that Miller smelled strongly of alcoholic beverage, that her eyes were bloodshot and her speech slurred. When Officer Drake asked Miller how much she had had to drink, she replied, "a lot." R. at 121. Officer Drake administered two field sobriety tests which Miller failed. Miller was then transported to the police station were a BAC Datamaster machine revealed that her blood alcohol content was .23%. R. at 125.

After Miller was charged, she filed a motion to suppress all the evidence gathered after Goen asked her to stop her car. The trial court denied the motion and Miller was convicted at a bench trial of operating a vehicle while intoxicated and operating a vehicle with .10% alcohol by weight in her blood.

## DECISION

Ind.Code 9–30–2–2 provides:

> A *law enforcement* officer may not *arrest* or issue a traffic information and summons to a person for a violation of an Indiana law regulating the use and operation of a motor vehicle on an Indiana highway or an ordinance of a city or town regulating the use and operation of a motor vehicle on an Indiana highway *unless* at the time of arrest the officer is:
>
> (1) wearing a distinctive uniform and a badge of authority; or
>
> (2) operating a motor vehicle that is clearly marked as a police vehicle;
>
> that will clearly show the officer or the officer's vehicle to casual observations to be an officer or police vehicle. This section does not apply to an officer making an arrest when there is a uniformed officer present at the time of the arrest.

(Emphasis added). At the hearing on her motion to suppress and now on appeal, Miller contends that Goen's detention of her amounted to an "arrest." Therefore, Miller argues, because Goen, as the arresting officer, was neither wearing a uniform and badge, nor driving a marked vehicle, his arrest of Miller was illegal pursuant to I.C. 9–30–2–2. Miller thus requests that her convictions be reversed.

In support of her argument, Miller refers us to the recent case of *State v. Caplinger* (1993), Ind.App., 616 N.E.2d 793, which she claims to be dispositive. The facts of Caplinger are remarkably similar to those of the case now before us:

> [O]n December 1, 1990, off-duty Lapel Police Officer Randy Busby (Officer Busby) was traveling in his personal vehicle on Pendleton Avenue in Lapel when he ob-

served Caplinger, who was driving ahead of him, swerve and cross the center line of the roadway. Caplinger turned and headed west on State Road 32 and Officer Busby followed. He observed her swerve across the center line several times, almost striking another car head-on once and almost drive off the right side of the road. He followed her from Madison County into Hamilton County.

Officer Busby contacted the Madison County Police Department with his cellular phone and informed them that he was following a possible drunken driver. Officer Busby was eventually connected with the Hamilton County Sheriff's Department, and while he was talking to the Hamilton County authorities, Caplinger attempted to turn into a driveway and stopped in a yard.

Officer Busby pulled into the driveway behind Caplinger, and Caplinger attempted to back out of the yard, almost striking Officer Busby's vehicle. Officer Busby exited his vehicle and approached Caplinger's car. He could smell the odor of alcoholic beverage emanating form Caplinger's vehicle. He reached into Caplinger's car, turned off the ignition, took Caplinger's keys and identified himself as a police officer. Officer Busby was not wearing a uniform and his personal vehicle was not marked as a police vehicle.

Subsequently, Hamilton County Sheriff's Deputy Bruce Knott (Knott) arrived at the scene. Knott conducted several field sobriety tests, three of which Caplinger failed, and read the implied consent law to Caplinger. Caplinger agreed to take a breathalyzer test and was taken to Hamilton County Jail. The alco-sensor test indicated her blood alcohol content was .17%. Caplinger was charged with operating a vehicle while intoxicated.

*Id.* at 793–4. Caplinger moved to suppress the events that transpired after Officer Busby stopped her. She contended that "she had been illegally arrested by Officer Busby because she was detained in a manner which effectuated an arrest and he was not in uniform as required by Ind.Code 9–4–8–1." [3] The trial court granted Caplinger's motion and the State appealed.

This court concluded that because Officer Busby was not wearing a uniform or driving a police vehicle, he did not have the authority to arrest Caplinger for a violation of any state laws regulating the use of motor vehicles. The State argued that Officer Busby's actions did not amount to an arrest, but rather an "investigative detention." This court noted that our Supreme Court has found that "[a]n arrest has occurred when police officers 'interrupt the freedom of an accused and restrict his liberty of movement.'" *Phillips v. State* (1986), Ind., 492 N.E.2d 10, 17 (*overruled on other grounds Moore v. State* (1986), Ind. 498 N.E.2d 1), *quoting Armstrong v. State* (1982) Ind., 429 N.E.2d 647, 651. We further noted that our Supreme Court has observed that the "[f]ailure to inform a defendant that he is 'under arrest' does not in every case mean that he was not in fact placed under arrest." *Dillon v. State* (1971), 257 Ind. 412, 417, 275 N.E.2d 312, 315.

Applying the dictates of the Supreme Court to the *Caplinger* facts, this court found:

An examination of the facts here compel us to conclude Caplinger was arrested by Officer Busby. At the suppression hearing Officer Busby testified that he took Caplinger's keys to prevent her from driving. He also testified that he identified himself as a police officer and that Caplinger was not free to leave. Since Officer Busby interrupted Caplinger's freedom and restricted her movement, we must conclude he effectively arrested her.

highways of this state, *unless, at the time of such arrest, such officer is wearing a distinctive uniform and a badge of authority, or is operating a motor vehicle which is clearly marked as a police vehicle, which will clearly show him or his vehicle to casual observations to be an officer....*
(emphasis added).

---

3. I.C. 9–4–8–1 was repealed and replaced by I.C. 9–30–2–2. I.C. 9–4–8–1 provided:
No peace officers shall have any authority to arrest any person for any violation of any of the laws of this state regulating the use and operation of motor vehicles on the public highways of the state, or any of the ordinances of any city or town thereof, regulating the use and operation of motor vehicles on the public

*Id.* at 795. Thus, we found Officer Busby's detention of Caplinger to be an illegal arrest.

■ As we did in *Caplinger,* we now conclude that because Goen was not wearing a uniform and badge nor driving a marked vehicle, he had no authority to arrest Miller for violating a law that regulates the use and operation of motor vehicles on Indiana highways. Furthermore, an examination of the facts now before us compels us to conclude that Goen's actions interrupted Miller's freedom and restricted her liberty of movement. He identified himself as a special deputy, gave her instructions as to the actions in which she was permitted to engage, told her that she was being detained, and took her car keys to prevent her from driving. In any case, he admitted that his actions interfered with Miller's freedom of movement. We therefore find that Goen effectively arrested Miller and that the arrest was illegal because he was neither wearing a uniform and badge, nor driving a marked vehicle as is prescribed by I.C. 9–30–2–2.

Nevertheless, the State argues that Goen's actions constituted an "investigatory stop" as opposed to an "arrest." Therefore, the State posits, Goen's actions did not trigger the uniform and/or marked vehicle requirements of I.C. 9–30–2–2. The State's argument is unavailing, as it was in *Caplinger, supra,* because it fails to account for Goen's actions that restricted Miller's liberty of movement. Contrary to the State's assertion that Goen merely "froze" the situation until a uniformed officer arrived at the scene, the facts reveal that, pursuant to the authority afforded by his Special Deputy Sheriff status, Goen interrupted Miller's freedom by ordering her to take certain actions, telling her that she was being detained, and by taking her car keys. The State also argues that Goen's actions did not fall within the purview of I.C. 9–30–2–2 because they took place in a church parking lot, as opposed to a public highway. We disagree. Goen identified himself to Miller as a Special Deputy and gave her orders to park her car along the roadway while their vehicles were stopped at a traffic light. Goen testified that he "permitted" Miller to drive to a nearby church parking lot when the traffic light turned green. Thus, Goen's interference with Miller's freedom and liberty of movement began while the two were on a public road.

In a further effort to circumvent the dictates of I.C. 9–30–2–2, the State points out that Officer Busby in *Caplinger, supra,* was a regular police officer, while Goen is a special deputy sheriff. Thus, the State argues, Goen's status as a Special Deputy excludes him from the uniform and/or marked car requirements of I.C. 9–30–2–2 because he is not a "law enforcement officer" as contemplated by that statute and defined by I.C. 9–13–2–92, which provides:

"Law enforcement officer" ... includes the following:

 (1) A state police officer.

 (2) A city, town, or county police officer.

 *(3) A sheriff.*

 (4) A county coroner.

(Emphasis added). Essentially, the State argues that the definition of a "law enforcement officer" found in I.C. 9–13–2–92(a)(3) excludes Sheriff Deputies—regular or special—from the uniform and/or marked car requirements of I.C. 9–30–2–2.

■ We disagree with the State's contention. In interpreting statutes, it is this court's primary objective to ascertain and give effect to the intent of the legislature. *St. Anthony Medical Center v. Smith* (1992), Ind.App., 592 N.E.2d 732, 739 *trans. denied.* In giving effect to the legislative intention, the objects and purposes of the statute in question must be considered, as well as the effect and consequences of such interpretation. *Holmes v. Review Bd. of Ind. Emp. Sec. Div.* (1983), Ind.App., 451 N.E.2d 83, 86, *reh'g denied, trans. denied.* Further, we will endeavor to give the statute in question a practical application, to construe it so as to prevent absurdity, hardship, or injustice, and to favor public convenience. *Baker v. State* (1985), Ind.App., 483 N.E.2d 772, 774. Thus, the provisions of I.C. 9–30–2–2 and I.C. 9–13–2–92 must be construed in relation to the "Special Deputy" statute, Ind.Code 36–8–10–10.6, which provides in pertinent part:

 (a) The sheriff may appoint as a special deputy any person who is employed by a

governmental entity as defined in I.C. 35–41–1 or private employer, the nature of which employment necessitates that the person have *the powers of a law enforcement officer*.[4]

(Emphasis added).

To accept the State's argument that sheriff deputies, specifically special sheriff deputies, are excluded from the definition of "law enforcement officer" as found in I.C. 9–13–2–92, ignores the dictates of the "Special Deputy" statute which distinctly recognizes that those appointed to be special deputies have the "powers of a law enforcement officer." *Id.* The State's contention also fails to take into consideration the obvious intent of the legislature, in enacting I.C. 9–30–2–2, to ensure that the law enforcement officers who enforce our traffic laws are either wearing a uniform and badge or driving a marked car when they effect an arrest or issue a traffic citation. Such requirements are good public policy in that they help to distinguish law enforcement officers from those individuals on our highways who, for illicit purposes, impersonate law enforcement officers.

Moreover, if we accept the State's contention, then the words "a sheriff" as found in I.C. 9–13–2–92(a)(3), refer only to the 92 individuals in the State of Indiana who hold the elected office of County Sheriff. Following the State's logic, the sheriff of a county is subject to the uniform and/or marked car requirements of I.C. 9–30–2–2. Also, pursuant to I.C. 9–13–2–92 a city, town, county, or state police officer is subject to the requirements of I.C. 9–30–2–2. However, a county sheriff's deputies, who are entrusted with the duty of enforcing the same laws as the other officers mentioned in I.C. 9–13–2–92, are not subject to those requirements, and thus may arrest and issue traffic citations to the public on Indiana roads without any identification whatsoever. Such a construction of I.C. 9–13–2–92 produces an absurdity that would not only confuse the public, but compromise its safety on our highways.

We conclude the legislature intended the words "a sheriff" as found in I.C. 9–13–2–92(a)(3) to include special deputies, and that Goen was therefore subject to the uniform and/or marked car requirements of I.C. 9–30–2–2. Because Goen's actions constituted

an illegal "arrest" of Miller, the trial court erred in admitting the evidence obtained after Goen interfered with Miller's freedom, including the results of Miller's breathalyzer test. Miller's conviction for operating a vehicle with at least a .10% by weight of alcohol in her blood is, therefore, reversed.

 However, the evidence gathered from Goen's observations prior to and contemporaneous with Miller's arrest would be admissible. *Caplinger, supra,* at 795, n. 4. Miller argues this remaining evidence is insufficient to sustain her conviction for operating a vehicle while intoxicated, and we agree. In reviewing the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of witnesses. We examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom, and, if there is substantial evidence of probative value to support the conviction, it will not be set aside. *Geans v. State* (1993), Ind.App., 623 N.E.2d 435, 437.

Ind.Code 9–30–5–2 provides that a person who operates a vehicle while intoxicated commits a class A misdemeanor. The term "intoxicated" is defined by Ind.Code 9–13–2–86, which provides in pertinent part: "Intoxicated" means under the influence of: (1) alcohol; so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers any person.

 The definition of "intoxicated," as recited above, does not require proof of a blood alcohol content. *Henriott v. State* (1990), Ind.App., 562 N.E.2d 1325, 1327. To establish the offense of driving while intoxicated, the State is required to establish that the defendant was impaired, regardless of his blood alcohol content. *Hurt v. State* (1990), Ind.App., 553 N.E.2d 1243. Here, Goen testified that he saw Miller's car fail to maintain a constant rate of speed, weave, and cross the center and right lines. When they came to a stop light, Goen approached Miller and asked if she was alright. She replied affirmatively. He asked if Miller was taking medication and she responded that she was not. Goen further testified that Miller was polite, cooperative, and that he did not notice

---

4. We note that Title 36 does not define the term "law enforcement officer."

the smell of alcoholic beverage emanating from her person.

When viewed in a light most favorable to the State, we cannot say this evidence is sufficient to conclude that Miller was "impaired." Numerous explanations exist for why a car fails to maintain a constant rate of speed, weaves, and crosses the center and right lines while traveling down a road. For example, the driver may be searching for something on the floor of the car, eating, drinking, or applying makeup. Without more, we cannot say the evidence is sufficient to sustain a conviction for operating a vehicle while intoxicated. Therefore, Miller's conviction for operating a motor vehicle while intoxicated is also reversed.

Reversed.

RILEY, J., concurs.

GARRARD, J., concurs with separate opinion.

GARRARD, Judge, concurring.

I concur with the majority, but feel the need to address an underlying issue. I have no quarrel with the concept of IC 9–30–2–2 or this court's interpretation of it. It seeks to avoid some very real problems involving actual police officers and some who might pretend to be. The legislative determination to subordinate the prosecution of some mine run traffic offenses to the values advanced by the statute is certainly within the legislative prerogative.

On the other hand it seems to me that this policy balance shifts when we are confronted with the case of driving impaired operators. Then the risk to life and limb caused by such driving should outweigh the values recognized by the statute. It also appears to me that a legislative exception for perceived OWI offenses might be enacted while maintaining the interests the statute seeks to protect through maintaining its application to other traffic offenses.

In the case before us Officer Goen may take satisfaction from the fact that he did prevent the further operation of the vehicle at the time in question and the risk of injury or death to others, including Ms. Miller. Yet the end result sends the wrong message. I, therefore, reluctantly concur.